**Frieda ROSENBERG, Plaintiff-Appellant,**

**v.**

**Elliot RICHARDSON, Secretary of Health, Education & Welfare, Defendant-Appellee.**

**No. 1118, Docket 75–6138.**

United States Court of Appeals, Second Circuit.

Submitted June 3, 1976.

Decided June 16, 1976.

---

Donald J. Fleishaker, New York City, for plaintiff-appellant.

David G. Trager, U. S. Atty. for the Eastern District of New York, Brooklyn, N. Y. (Josephine Y. King, Asst. U. S. Atty., Brooklyn, N. Y., of counsel), for defendant-appellee.

Before KAUFMAN, Chief Judge, CLARK, Associate Justice,* and TIMBERS, Circuit Judge.

IRVING R. KAUFMAN, Chief Judge:

■ Although preservation of the fisc is a laudable goal, public officials must pursue it with discretion, lest deserving individuals be deprived of payments Congress clearly intended them to have. This maxim applies with even greater force when the benefits are not governmental largesse, but instead have been purchased by or for the claimant. It is therefore difficult to understand why the Government has, in this case, spent seven years and untold thousands of dollars in administrative and legal fees in a seemingly rigid and arbitrary attempt to deprive Frieda Rosenberg of the modest Social Security widow's benefits Max Rosenberg paid for and wished her to receive.

We should observe at the outset, that the Government concedes that Max and Frieda lived together as man and wife for thirty-six years, from the time of their marriage in 1935 to Max's death in 1971. Nor is it disputed that their wedding was undertaken in good faith reliance upon legal advice that Max's Mexican divorce from his former wife, Celia Rosenberg, would be recognized as valid. Because the lawyer's advice seems to have been in error, Celia Rosenberg, as Max's "legal" widow, has been permitted to augment her own old age insurance benefits by the insignificant sum of $1.40 per month. Yet, Max Rosenberg sacrificed a significant portion of his weekly paychecks over decades of employment to build a widow's benefit fund of $165.20 per month for Frieda, the woman he regarded for thirty-six years as his lawful wife. It is not consistent with the beneficent spirit of the Social Security Act that the Treasury should confiscate this entire fund, intended to serve as a means of support for a 69-year-old woman, merely because an inadvertent and unforeseen error allowed another, under the extraordinary circumstances present here, to have a claim on less than 1% of the fund. We cannot agree with the Secretary that the payment of $1.40 per month to Celia must cause Frieda to forfeit the entire $165.20 to the Treasury as a windfall.

### I.

The facts necessary to decide this appeal were developed before the Administrative Law Judge, are not in dispute, and will be briefly summarized here. In 1920, Max Rosenberg married Celia Beck in New York City. Max was twenty-one years old, and Celia was only eighteen. Their union was not felicitous, and from the beginning, in Celia's words, Max "came and went." After thirteen years, Max resolved to sever the conjugal bonds completely, and obtained a Mexican divorce by mail.

Celia never remarried, and eventually sought employment. She apparently saw little of Max thereafter and had no commu-

*United States Supreme Court, retired, sitting by designation.

nication with him during the final two decades of his life. Indeed, in 1967, when she applied for Social Security benefits based upon her own contributions as an employee, she listed herself as the "widow" of "Louis" Rosenberg who, she indicated, had died on "5/8/54". She also expressly disclaimed any desire to receive widow's benefits at that time, "as my own benefits will be higher."

Max, two years after his Mexican divorce from Celia, married Frieda Silverstein in a civil ceremony before a Greenwich, Connecticut, justice of the peace. Max and Frieda, both New York domiciliaries, decided to wed in Connecticut because a lawyer had advised them that this state would recognize the effectiveness of Max's Mexican divorce from Celia, thereby rendering valid the subsequent marriage. Max and Frieda lived together as man and wife for thirty-six years, until Max's death on April 14, 1971. While Frieda served as a housewife and mother of the couple's two children, Max, an electrician, supported the family. For many years Max's take-home pay was diminished by the portion of his salary that was applied to build up the Social Security fund for his "wife"—who Max clearly thought and intended to be Frieda.[1]

After Max's death, Frieda applied for widow's benefits, thereby bringing into play the labyrinthine provisions of the Social Security Act. A brief description of the relevant portions of that Act will place the ensuing controversy in sharper focus.

To receive a widow's benefit under § 202(e) of the Act, 42 U.S.C. § 402(e), a woman must be the "surviving wife" of the insured, 42 U.S.C. § 416(c). "Wife" is defined in § 216(h)(1), 42 U.S.C. § 416(h)(1). That section, in what is now subparagraph (A), originally defined "wife" by reference to the state law of the wage earner's domicile. Since state family law is often confused, however, many women, whose husbands paid social security taxes for years, found themselves ineligible for the benefits intended for them, because marriages contracted in good faith were subsequently found invalid. To remedy this evil, Congress in 1960 enacted subparagraph (B), permitting such women to be "deemed" wives for purposes of the Social Security Act.[2]

But, although Congress thus sought to provide benefits to women whose marriages, because of technical state laws, were not recognized as valid, it did not wish to permit a deceased wage earner to have both a "legal" widow and an array of "deemed" widows, each of whom could gain full Social Security widow's benefits. Congress therefore added a clause designed to avoid duplicate payments. Although the new provisions gave the "legal" widow preference over the "deemed" widow, Congress took care to reject the easy course of automatically denying benefits to a "deemed" widow when a "legal" wife also survived the wage-earner's death. Subparagraph (B) specifies that a woman who qualified as a "deemed" widow would receive benefits unless and until the "legal" widow made a formal application for widow's payments:

> The entitlement to a monthly benefit . . . based on the wages . . . of [an] insured individual, of a person

---

1. In a sworn affidavit, in prior proceedings not relevant to the question before us, Max stated:

   Everybody considers us as man and wife. As you can see from . . . [our] letters, we considered ourselves man and wife in January 1969 and still do in August 1969 and at present. Everybody who knows us considers us man and wife.

2. Section 216(h)(1)(B) of the Act, 42 U.S.C. § 416(h)(1)(B), provides in relevant part:

   In any case where under subparagraph (A) an applicant is not (and is not deemed to be) the . . . widow . . . of a fully . . . insured individual . . . ., but it

is established to the satisfaction of the Secretary that such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual . . . ., then, for purposes of subparagraph (A) . . . such purported marriage shall be deemed to be a valid marriage.

who would not be deemed to be a . . widow . . . of such insured individual but for this subparagraph, shall end with the month before the month . . in which the Secretary certifies . . . that another person is entitled to a benefit under [§ 402(e)] if such other person is . . . the . . . widow . . . under subparagraph (A). . . .

42 U.S.C. § 416(h)(1)(B).

For some reason not clear Celia Rosenberg, who was receiving benefits from her own salary deductions, after all these years applied for a widow's benefit and was certified Max's "legal" surviving wife in December, 1971. The Secretary ruled that New York courts would consider Max's *ex parte* Mexican divorce ineffective to dissolve his union with Celia and, accordingly, found Celia to be Max's widow under subparagraph (A). Because she was already receiving $163.80 per month on her own work account, however, certification increased Celia's monthly benefit by only $1.40.[3]

After a hearing, held in 1973, the Administrative Law Judge found that Frieda's marriage with Max was entered into in good faith and met all the other requirements of subparagraph (B). Although Frieda was awarded widow's benefits through November, 1971, the Administrative Law Judge held that Frieda could not continue to receive any payments thereafter, because of Celia's intervening certification as Max's "legal" widow in December, 1971. Frieda appealed this ruling to the Department's Appeals Council, but in 1974 the Administrative Law Judge's decision was affirmed. Frieda thereupon brought suit in the Eastern District of New York for review under 42 U.S.C. § 405(g). On November 18, 1975, Chief Judge Mishler, in a two-page memorandum opinion, granted the Government's motion for judgment on the pleadings.

Because we cannot agree that Congress intended a "deemed" widow in Frieda's position to forfeit *all* benefits merely because an infinitesimal fraction of the full widow's benefit that Max paid for from his hard-earned wages was required to go to his "legal" widow, we reverse.

II.

It is a familiar maxim of statutory interpretation that courts should enforce a law so as to achieve its overriding purpose, even if the words of the act leave room for a contrary interpretation. *Haberman v. Finch*, 418 F.2d 664, 666 (2d Cir. 1969). "[I]t is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.) (L. Hand, *J.*) *affirmed*, 326 U.S. 404, 66 S.Ct. 193, 90 L.Ed. 165 (1945).

Congress intended the Social Security Act as a broad program of social insurance, on which working people could rely to provide for themselves and their dependents in old age. It is essential, therefore, that the Act be liberally construed and applied. *Eisenhauer v. Matthews*, 535 F.2d 681 at 685 (2d Cir. 1976); *Adams v. Weinberger*, 521 F.2d 656, 659 (2d Cir. 1975); *Gold v. Secretary of Health, Education and Welfare*, 463 F.2d 38, 41 (2d Cir. 1972); *Haberman v. Finch, supra* at 667. Moreover, the Social Security System is one based on contributions, in which claimants are not recipients of "hand-outs". They are, instead, beneficiaries of insured wage earners, "entitled to no less than a liberal and broad construction will allow." *Id.*

These principles compel us to conclude that Frieda has a right, under subparagraph (B), to the entire widow's benefit for which Max paid, deducting the portion

---

**3.** Under § 202(k)(3)(A), 42 U.S.C. § 402(k)(3)(A), amounts received as a widow are reduced dollar-for-dollar by one's own old age benefits. Thus, Celia continued to receive monthly benefits of $163.80 under § 202(a) of the Act, 42 U.S.C. § 402(a), and was awarded an additional $1.40 each month—that is, the difference between the full $165.20 benefit and her $163.80 old-age benefit—due to her status as Max's "legal" widow.

being applied to augment the amount Celia was receiving on her own work account. As we have indicated, Max Rosenberg contributed a substantial portion of his income over the years to procure a benefit for his "widow," who—for the last thirty-six years of his life—he believed would be Frieda. And, significantly, the Secretary, the Administrative Law Judge, the HEW Appeals Council, and Chief Judge Mishler agree unanimously that Frieda would be Max's "widow" for Social Security purposes, had Celia not applied for her $1.40 per month "widow's" benefits. Thus, if Celia had agreed to forego the additional $1.40 monthly benefit, Frieda would unquestionably have continued to receive the full $165.20 per month awarded her as Max's widow through November, 1971. That all of Max's wishes and good-faith efforts should be thwarted because less than 1% of this benefit is to be paid to Celia, seems egregious on its face. It seems inconceivable to us that Congress would have wished the Government—which is little more than an insurer receiving "premiums" from the insured for an intended beneficiary—to enrich itself by the remaining 99%.

▮ Our view is wholly consonant with the language of the Act. Although the statute requires Frieda's "monthly benefit" to be terminated if Celia receives "a benefit," its legislative history, see 2 U.S.Code Cong. & Adm.News pp. 3629, 3684–85 (1960); H.R.Rep.1799, 86th Cong., 2d Sess., at 16, 91 (1960), leaves no room for doubt that Congress intended "a benefit" in this context to mean "a *full* benefit." [4] This reading is essential if we are to effectuate Congress's fundamental and meaningful purpose in enacting subparagraph (B), to permit a person in Frieda's position to receive a widow's benefit unless her husband's work account is already exhausted in payments to a "legal" widow.

Accordingly, the judgment of the district court must be reversed. We remand with instructions to enter judgment for the ap-

pellant, in an amount equal to the *difference* between (1) the full widow's benefit Frieda would receive, but for Celia's application, and (2) the amount by which Celia's Social Security payments have been increased by virtue of her certification as "legal" widow, defined by 42 U.S.C. § 416(h)(1)(A).

---

4. We note that the Social Security Act, in other contexts, uses "benefit" in the singular to mean "full benefit." Thus, in § 202(e)(2)(A), 42

U.S.C. § 402(e)(2)(A), "benefit" is defined as the entire primary insurance amount of the deceased individual.