DWYER, Hilda G.

v.

CALIFANO, Joseph, Secretary of Health, Education and Welfare, Appellant.

No. 80–1186.

United States Court of Appeals, Third Circuit.

Argued Oct. 6, 1980.

Decided Dec. 11, 1980.

Peter F. Vaira, U.S. Atty., Gary Tilles, Asst. U.S. Atty., Philadelphia, Pa. and Stephanie W. Naidoff, Regional Atty., Larry H. Bailine, Asst. Regional Atty. (argued), Dept. of Health, Ed. & Welfare, Philadelphia, Pa. and Leonard Schaitman, Wendy M. Keats, Civil Division, U.S. Dept. of Justice, Washington, D.C., for appellant.

Ivan Shomer, (argued), Philadelphia, Pa., for appellee.

Before ALDISERT, VAN DUSEN and GARTH, Circuit Judges.

## OPINION OF THE COURT

VAN DUSEN, Senior Circuit Judge.

This is an appeal from the district court's November 23, 1979, order granting the plaintiff's cross–motion for entry of summary judgment against the Secretary of Health, Education and Welfare. The plaintiff, Hilda Dwyer, sought part of the social security insurance benefits payable by reason of the death of her husband, Roland Dwyer. The district court awarded such partial benefits to her and denied the Secretary's motion for summary judgment. This court has jurisdiction of the Secretary's appeal under 28 U.S.C. § 1291 (1976). We reverse and direct the district court to grant the Secretary's motion for summary judgment and deny plaintiff's cross–motion for summary judgment.

Roland Dwyer married Effie Bishop in 1925 but she left him and their children when they separated in 1932. In 1934, she began living with George Seitz and she later had three children by him. She used the name Seitz after 1938. In 1943, Roland Dwyer met the plaintiff and they were married by a minister on July 21, 1945. Roland, his friends, and his daughter had told Hilda that he was divorced and single, and she believed them. Roland and Hilda Dwyer lived together as husband and wife until he died in March 1976.

Hilda Dwyer began receiving her husband's social security benefits as his wife in February 1973, and she received his widow's insurance benefits after he died. Effie Seitz applied for those same benefits in August 1976. On April 21, 1977, the Social Security Administration awarded the widow's benefits to Effie and terminated Hilda's payments. Hilda appealed, and on February 9, 1978, an administrative law judge found that Effie and Roland were never divorced. He determined that Effie was entitled to the benefits as Roland's legal widow.

Effie had previously received social security benefits on her own account. These payments stopped when she began to receive the larger amount of widow's benefits.[1] In 1980, Effie received $388.20 per month as a widow of Roland and would have received $229.90 per month on her own account. The administrative law judge found that Hilda would qualify as a deemed widow but for Effie's status as the legal widow. Hilda claimed that, even if Effie were Roland's legal widow, under *Rosenberg v. Richardson*, 538 F.2d 487 (2d Cir. 1976), Hilda was his "deemed" widow under section 216(h)(1)(B) of the Social Security Act, 42 U.S.C. § 416(h)(1)(B) (1976),[2] and

---

1. Section 202(k)(3)(A) of the Social Security Act, 42 U.S.C. § 402 (k)(3)(A) (1976), prevents people from receiving *both* their own benefits *and* widow's or widower's benefits. Each dollar of widow's benefits in effect cancels one dollar of the woman's own benefits. Therefore, if the widow's benefits exceed the woman's own benefits, she will no longer receive any of her own benefits.

2. This section provides that a person who was not legally married to a deceased wage earner may still be "deemed" to be a widow or widower. A deemed widow must have in good faith gone through a marriage ceremony with the deceased and have been living with him when

should receive the amount which the Administration would have paid to Effie on her own account if she were not receiving a widow's benefit. The administrative law judge rejected this contention and declined to follow *Rosenberg* on the facts he found in this case, although he found that Hilda had believed in good faith that she had married Roland. This determination became the Secretary's final decision on April 12, 1978, when the Appeals Council denied her request to review it.

The plaintiff's district court action challenged only the refusal to adopt *Rosenberg*, and did not challenge (at trial or on appeal) the finding that Effie Seitz was the legal widow. The district court ordered the Secretary to pay to the plaintiff "the *differ-*

*ence* between (a) the full widow's benefit Plaintiff would receive, but for the application of the 'legal' widow, Effie Bishop Seitz, and (b) the amount by which the 'legal' widow's Social Security payments have been increased by virtue of her certification as 'legal' widow by the Secretary" (emphasis in original). This amount equals the payments which Effie would have received on her own account.

In *Rosenberg v. Richardson*, 538 F.2d 487 (2d Cir.1976),[3] the deceased wage earner had procured a Mexican divorce from his first wife. His second wife received $165.20 per month after his death until the first wife also applied for those benefits. The Administration determined that New York would not recognize the divorce and award-

---

he died. The deemed widow receives her spouse's benefits unless and until another "is or has been entitled to a benefit" as the legal widow. Section 216(h)(1)(B) reads:

"(B) In any case where . . . an applicant is not . . . the wife, widow, husband, or widower of a fully or currently insured individual, . . . but it is established to the satisfaction of the Secretary that such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual . . ., such purported marriage shall be deemed to be a valid marriage. The provisions of the preceding sentence shall not apply (i) if another person is or has been entitled to a benefit . . . and such other person is . . . a wife, widow, husband, or widower of such insured individual under subparagraph (A) at the time such applicant files the application. . . . The entitlement to a monthly benefit . . . of a person who would not be deemed to be a wife, widow, husband, or widower of such insured individual but for this subparagraph, shall end with the month before the month . . . the Secretary certifies . . . that another person is entitled to a benefit . . . if such other person is . . . the wife, widow, husband, or widower of such insured individual. . . ."

3. The district court relied on this case and declined to follow *Davis v. Califano*, 603 F.2d 618 (7th Cir. 1979), stating in its opinion (12a):
"I am sufficiently persuaded by the Second Circuit opinion in Rosenberg that I will not decide this case for the Secretary on the

basis of the plain language of the statute, but, rather will attempt to construe it and determine what the statutory intent is as applied to this kind of situation."
In *Davis*, the court said:
"A plain and fair reading of Section 416(h)(1)(B) leaves no room for question, doubt or ambiguity. Congress decided that there can be no deemed spouse receiving widow's benefits if the legal widow is entitled to the benefits. 42 U.S.C. § 416(h)(1)(B); *see* *Woodson v. Califano*, 455 F.Supp. 457 (S.D. Tex.1978); *McGuire v. Califano*, 440 F.Supp. 1031 (D.Neb.1977). In the present case we have already affirmed the Secretary's determination that Novella Davis is Henry's legal widow. Mary, therefore, is precluded from receiving benefits.

. . . . .

"The Congress, recognizing that persons may have entitlement to multiple benefits, enacted Section 402(k)(3)(A) to establish a maximum level of benefits. *See* footnote 8. There is no authority that persuades us that Congress intended to suspend the operation of the statute for a new category, the deemed spouse. We are convinced that there can be no deemed spouse receiving benefits if the legal widow is entitled to the payment, 42 U.S.C. § [416(h)(1)(B)], as we cannot close our eyes to clear congressional intendment. The Congress declined to command the Social Security Administration to pay widow's insurance benefits to two widows, and so must we. In some ways this is a disturbing and inequitable result. We understand the desire of the district court to work out a division of the payments. It may not have been a bad solution, but we do not believe it to be good law."
603 F.2d at 627–29.

ed these benefits ($165.20) to the first wife, terminating the second wife's payments. The first wife then ceased to receive the $163.80 per month payments she had previously been receiving on her own account— her net gain being $1.40 per month by receipt of benefits as a widow.

The opinion in *Rosenberg* awarded $163.80 per month to the second wife. The Government thus would continue to pay the same *total* amount to the two women that it had paid to them before the first wife applied for widow's benefits. The court held that the language in the statute, "shall end with the [time] . . . that another person is entitled to *a benefit*" (emphasis added), was ambiguous. The opinion cited legislative history to support its conclusion that the deemed widow's payments should end only when the legal widow actually received a *full* benefit. *Id.* at 491. Since the first wife had a net gain of $1.40, the court ordered the Secretary to pay to the second wife the widow's benefits minus $1.40 (or whatever amount equaled this net difference in the future).

We decline to follow *Rosenberg* in view of the record in this case for these reasons. First, the legislative history of section 216(h)(1)(B) only restates the basic language of the statute. H.R.Rep.No.1799, 86th Cong., 2d Sess. 16, 91 (1960); S.Rep. No.1856, 86th Cong., 2d Sess., *reprinted in* [1960] U.S.Code Cong. & Ad.News, pp. 3608, 3629, 3684–85. It provides no support for plaintiff on this record. We conclude that the words of the statute, "is entitled to a benefit," plainly refer to a benefit, not only to a full benefit. In any event, Effie Seitz was *entitled* to a full benefit, payable due to the death of her husband Roland, as of April 1977. Her net gain was less than the entire amount of widow's benefits, see note 1, *supra*, but the statute uses the word "entitled." *See* note 2, *supra*.

Second, *Rosenberg* ignores other language in section 216(h)(1)(B). This other language states that the "provisions of the preceding sentence [providing for deemed widows] shall not apply . . . if another person is *or has been* entitled to a benefit" as a legal widow (emphasis added). Under this clause, if a legal widow previously but no longer received her spouse's benefits and hence "has been entitled to a benefit," the deemed widow could not receive any widow's benefits for that husband. *Woodson v. Califano*, 455 F.Supp. 457 (S.D.Tex.1978), *appeal docketed*, No. 78–3214 (5th Cir. Oct. 10, 1978) (argued May 1, 1980). This clear language in subparagraph (h)(1)(B) ("has been entitled") contradicts *Rosenberg's* analysis; under the *Rosenberg* analysis, the deemed widow would receive the entire benefit since the legal widow was receiving nothing. The words "or has been entitled" would mean nothing, and we decline the invitation to hold that such words were a mere oversight.

Third, *Rosenberg* based its result on the wage earner's "fund." Social security taxes are not set aside in a separate account or fund. The Administration never pays out any benefits if both spouses die before they become eligible. If one or both spouses live to be very old, the payments will exceed their contributions. Any concept of a fund being exhausted has no significance under the terms of the applicable legislation.

Fourth, no opinion we have been able to find outside the Second Circuit followed *Rosenberg* before the district court decision now before this panel. We believe that *Davis v. Califano*, 603 F.2d at 628–29 (*supra* note 3), which rejected *Rosenberg* for the reasons discussed above, is persuasive.[4]

The Seventh Circuit also distinguished the facts underlying *Rosenberg*. *Davis v. Califano*, 603 F.2d at 628. In *Rosenberg*, the first wife's total monthly benefits only increased by $1.40, while in *Davis* the increase was substantial—$217. Effie Seitz's monthly benefits increased by $158.30. This increase is clearly "a benefit," even if

---

**4.** See also Martin, *Social Security Benefits for Spouses*, 63 Cornell L.Rev. 789 (1978), stating that "[i]n *Rosenberg* [the court] was so offended by the termination of substantial benefits to a longstanding 'good faith' widow . . . that [it] twisted the language of § 416(h)(1)(B) to reach a contrary and insupportable conclusion." *Id.* at 819 n.119.

one could argue that $1.40 was not "a benefit." In our view, Effie was *entitled* to the entire benefit, based on the language used by Congress.

*Davis* also distinguished *Rosenberg* because the latter involved an inadvertent error by the husband. *Rosenberg* relied heavily on Max Rosenberg's reasonable expectations that his second wife would receive his benefits after he died. While we do not agree that the husband's expectations are determinative, Henry Davis and Roland Dwyer both knew that they had never divorced their first wives and thus they could not reasonably expect that their second wives would be their legal widows. Accordingly, our holding does not frustrate Mr. Dwyer's reasonable expectations. Since Hilda was not the wage earner, her expectations are not relevant except in determining whether she met the threshold "good faith" test.

The district court in this case held that Congress intended to take care of deemed widows (9a). Since the language of section 216(h)(1)(B) is narrow in scope due to its limitations on the deemed widows entitled to recover under its terms (see page 6 above), it seems most unlikely that Congress intended to provide for deemed widows generally. If Congress had such intention, then the *Rosenberg* case does not accomplish this objective. A few deemed widows will receive some benefits under that rule, but many will still receive none.[5] Under *Rosenberg*, if Effie had no benefits from her own account, then Hilda would still get nothing. The second wife receives the first wife's *own* benefits under the *Rosenberg* formula. Since *Rosenberg* held that expectations were crucial, one might ask whether the first wife works and pays her social security taxes with the expectation of providing for her husband's second wife. The *Rosenberg* holding has this effect.

The contention that Congress intended to take care of deemed widows is mere speculation. Congress appears to have intended that a deceased husband's benefits go to his deemed widow rather than to no one, where no person qualified as his legal widow. The husband would have the right to have his benefits go to *someone*, but Congress did not provide that the benefits should go to *two* spouses. Before the 1960 amendment provided for "deemed" widows,[6] no spouse would receive any widow's benefits if the legal widow had predeceased the husband, even though second wife believed in good faith that she was legally married. Congress could rationally decide that if the legal widow was never eligible for any payments or if no legal widow existed and the marriage was otherwise invalid, then the "deemed" widow was the second best choice to receive benefits. The language of the statute indicates that, where the legal widow was certified to be entitled to benefits, Congress intended to defer to state law and pay the benefits to her as opposed to the deemed widow.

When legal widows receive widows' benefits in excess of their own benefits, the latter payments cease. Congress made no provision to transfer these discontinued payments to the "deemed" widow. To do so wholly defeats section 202(k)(3)(A) (42 U.S.C. § 402(k)(3)(A)), which existed in 1960 when Congress added the provision for "deemed" widows. See *Davis v. Califano*, 603 F.2d at 628–29. It is for Congress, not this court, to order such a transfer of payments to a person such as plaintiff solely because she is deserving or for any other reason it may determine.[7] Some might be outraged that Effie receives Roland's bene-

---

5. The district court and plaintiff both asserted that the situation in this case is rare, although neither that court nor the plaintiff points to anything in the record to support the district court's repeated assertion that the situation presented by this case is "so rare" (16a).

6. Social Security Amendments of 1960, Pub. L.No. 86–778, § 208, 74 Stat. 951.

7. A copy of this opinion will be sent to the appropriate committees of both Houses of Congress so that they may consider amending section 216(h)(1)(B), 42 U.S.C. § 416(h)(1)(B) (1976), if they care to do so.

fits when she has had nothing to do with him or their children for nearly 50 years. The issue of Effie's payments, however, is not before this court. We decide only that the statute does not authorize additional payments to the plaintiff under the facts in this record.

The judgment of the district court will be reversed and remanded, with instructions to enter summary judgment for the Secretary and to deny plaintiff's cross–motion for summary judgment.