**Eliza M. WOODSON, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 78–3214.

United States Court of Appeals, Fifth Circuit.

Sept. 25, 1981.

Thornberry, Circuit Judge, dissented and filed opinion.

Thomas C. Petley, Houston, Tex., for plaintiff-appellant.

Arthur R. Amdur, Houston, Tex., for defendant-appellee.

Before THORNBERRY, ANDERSON and THOMAS A. CLARK, Circuit Judges.

THOMAS A. CLARK, Circuit Judge:

The appellant, Eliza M. Woodson, sought survivors insurance benefit payments as the

widow of Rushell Woodson pursuant to 42 U.S.C. §§ 402 *et seq.* The Secretary of Health and Human Services denied the application, and the district court, 455 F.Supp. 457, affirmed that decision. Because of a mistake made by the Secretary in a determination in another proceeding that a stepchild of Rushell Woodson was entitled to benefits, and because of a misinterpretation of the meaning of 42 U.S.C. § 416(h)(1)(B), we reverse.

Plaintiff is seeking widow's benefits by virtue of her marriage to Rushell Woodson, who had three ceremonial marriages in his lifetime. His first marriage, to Mary Lou Woodson, ended with her death on November 17, 1955. Rushell Woodson then married Ethel Hurd in 1957. The couple apparently separated sometime before 1960, but the marriage never was terminated by divorce. Rushell Woodson began living with plaintiff Eliza Woodson in 1962, and they were married on March 30, 1966. Rushell Woodson died on May 25, 1970. As his widow, Eliza Woodson applied in June 1970 for a lump sum death payment on his wage earner's Social Security account, and that payment was made.

In January 1971, Ethel Hurd, the second wife, applied for mother's insurance benefits on Rushell Woodson's Social Security account as the mother of a child named Diane Woodson, who was born on November 16, 1954, approximately two and one-half years before Ethel and Woodson were married and at a time when Ethel was married to Clarence Hurd and Rushell was married to Mary Lou. The mother's insurance benefits for the child were paid for five months retroactively and then were terminated because Ethel had remarried. But for the payment of the benefits for the child for five months to Ethel, Eliza, the plaintiff, unquestionably would be entitled to a widow's benefit as the "deemed" widow of Rushell.

The district court's judgment turned on this payment of mother's benefits. The following excerpts from the court's memorandum opinion reflect that court's thinking:

Ethel Hurd had applied for and received mother's benefits (although the child was not Woodson's) for five months on Woodson's Social Security account. The applicable Social Security statute, 42 U.S.C. § 416(h)(1)(B), provides that a putative spouse may receive benefits unless the legal wife "is or has been entitled" to benefits. Here, Ethel Hurd was entitled to and received benefits on Woodson's account for five months, until her remarriage to another man ended her eligibility. 42 U.S.C. § 402(g)(1).

\*    \*    \*    \*    \*    \*

It is true that in this case there will be no "double-dipping" into Woodson's account by a legal and putative spouse simultaneously. In fact, there will be no dipping at all, as neither the plaintiff nor Ethel Hurd will be entitled to benefits. Nevertheless, Ethel Hurd received benefits on Woodson's account for five months. Her remarriage cut her off from such benefits. If she had not remarried, Ethel Hurd could still be receiving benefits on Woodson's account, and plaintiff would have no basis for her claim. Although the equities seem to favor the plaintiff, in that Ethel Hurd only received five months of benefits for a child that was not Woodson's, and plaintiff was Woodson's companion for his last eight years, the law expressly provides that a putative spouse will be cut off from benefits if the legal spouse "is or has been" entitled to benefits.

The imbroglio in which we find ourselves had its inception when the parties throughout this proceeding considered Diane Woodson to be the stepchild of Rushell Woodson. The government's brief refers to the child as a stepchild. The district court in its opinion does not use the word "stepchild," but it comments that the child is not Woodson's. At oral argument the attorney for the appellant/claimant, Eliza Woodson, contended, for the first time, that in order for a stepchild to be eligible for children's benefits, a prerequisite to a widow's entitlement to mother's benefits for her child, the stepchild must be dependent upon the stepfather and must have been living with the stepfather or receiving at least one-half of

his or her support from the stepfather at the time of the latter's death. 42 U.S.C. § 402(d)(4). There is no evidence that Diane met these conditions. Under this newly introduced theory, Eliza Woodson would be entitled to widow's benefits because the Secretary erred in making payments to Ethel Hurd as the mother of Diane for the five months as previously described.

Given the set of facts developed by the Administrative Law Judge, considered by the Secretary, and then reviewed by the district court, we reverse the judgment and the decision of the Secretary denying benefits to Eliza Woodson. The decision to do so is complicated by the fact that since oral argument the Secretary, through counsel, furnished us with documentary evidence not heretofore presented which might be construed as demonstrating that Diane Woodson was the legitimated child of Rushell Woodson instead of his stepchild. Counsel submitted a copy of Diane's birth certificate reflecting the father to be Rushell Woodson. However, at the time of Diane's birth, Ethel was not married to Rushell Woodson, but rather to Clarence Hurd. The Secretary also submitted a statement signed by Clarence Hurd that he was not living with Ethel in 1954 and that the child born November 16, 1954, was not his. Further, the Secretary included a document, an internal form, on one line of which, in describing the relationship of Diane to Rushell, are the letters "SC," standing for stepchild. The "SC" is crossed out, however, and below it are handprinted the letters "LC," standing for legitimated child. The Secretary argues that the case should not be remanded because that would serve no useful purpose. Counsel for the Secretary contends in his transmittal letter that the appellant should not be permitted to raise new issues or to introduce new evidence for the first time on appeal. The appellant did not attempt to offer further evidence, but merely belatedly called attention to the law governing the payment of benefits to children. While we might be critical of the tardy research of the statutes, we cannot say this is a new issue; it is merely recognition of the law governing an existing issue in the case.

Before advancing the argument that the stepchild was not entitled to benefits in the first instance, counsel for appellant presented an equitable argument that Eliza Woodson should be entitled to widow's benefits because of her marriage to Rushell Woodson, their living the last years of his life with each other, the acquisition of a joint home together, and the fact that only five months worth of mother's benefits had been paid from the account of the deceased wage earner. Without those payments Eliza Woodson would be entitled to payment as a "deemed" widow. That entitlement arises from Congressional recognition that many marriages in this country entail the legal impediment of a prior undissolved marriage of one of the parties. Provision for permitting entitlement notwithstanding such defective marriages is contained in 42 U.S.C. § 416(h)(1)(B). Subparagraph (A) of this section defines an eligible widow or widower as one who was validly married to the wage earner at the time of the wage earner's death or, alternatively, would inherit as a common-law widow under the intestacy statutes of the state in which the couple resided. Subparagraph (B) provides that a widow or widower is eligible for survivor benefits notwithstanding a prior undissolved marriage if the parties had gone through a marriage ceremony, the applicant entered the marriage in good faith, and the applicant and insured individual were living in the same household at the time of the death of the insured individual. Subparagraph (B) contains the following limitation upon the right of such a "deemed" widow or widower to qualify for benefits:

> The provisions of the preceding sentence shall not apply (i) if another person is or has been entitled to a benefit under subsection (b), (c), (e), (f), or (g) of section 402 of this title on the basis of the wages and self-employment income of such insured individual and such other person is (or is deemed to be) a wife, widow, husband, or widower of such insured individual under subsection (A) at the time such applicant files the application. . . .

42 U.S.C. § 416(h)(1)(B). This limitation obviously was intended by Congress (a) to prevent withdrawals from the insured wage

earner's account by both a "legal" widow and a "deemed" widow at the same time, and (b) to give a "legal" widow a prior right to benefits over those of a "deemed" widow. A troubling clause in subparagraph (B) is "if another person is *or has been entitled* to a benefit" (emphasis supplied). Reading the sentence literally, one can posit that not only is double-dipping prevented, but a widow eligible under subparagraph (B) loses that eligibility for benefits if a "legal" widow "has been entitled" to a mother's insurance benefit (under § 402(g)). To disqualify Eliza Woodson from receiving widow's benefits, we would have to conclude that Diane was the daughter of Rushell Woodson or that he supported her as a stepchild. Neither of these factual findings are established by this record. The district court found or held that Diane was not Rushell's child but did not find that Rushell was contributing to the support of the stepchild as required for eligibility for benefits.

■ We hold that Ethel Stephens was not entitled to be paid mother's benefits for the child, that payments to her were by virtue of a mistake, and that those payments do not render Eliza Woodson ineligible to receive benefits as a "deemed" widow. The attorney for the Secretary developed the case at all levels, including his brief in this court, on the theory that Diane was the stepchild of Rushell. Nevertheless, the Secretary did not see fit to prove the dependency of the stepchild upon the stepfather as required by 42 U.S.C. § 402(d)(4) in order to establish Ethel Stephens' entitlement to mother's benefits for her child. The claimant, Eliza Woodson, established sufficient evidence to prove that she was a "deemed" widow under subparagraph (B) of 42 U.S.C. § 416(h)(1). There has never been any question but that this status was established at all levels of the litigation. The Secretary had the burden of establishing that Ethel Stephens was entitled to mother's benefits, which proof would render Eliza Woodson ineligible because of the asserted limitation contained in subparagraph (B), *supra*. The Secretary's attorney should have known that the statute required proof that the stepfather contributed to the stepchild to the extent of making her a depend-

ent. Either the Secretary's attorney was not fully familiar with the statute or did not have the evidence to establish the dependency. We refuse to penalize the claimant in this case because her attorney failed to point out the error of the Secretary's attorney until the proceeding reached this court.

■ For still another reason, we deem it unnecessary to remand this case for further proceedings. We hold that under the limited facts of this case, Eliza Woodson would be entitled to benefits even if Diane had been the legitimated child of Rushell or, as a stepchild, had been dependent upon him.

We must again discuss 42 U.S.C. § 416(h)(1)(B). Another troubling clause in the sentence previously quoted from the statute is "*and such other person is . . . a wife [or] widow . . . of such insured individual . . . at the time such applicant files the application. . . .*" (emphasis supplied). In this case, Eliza Woodson is the "applicant" and "such other person" is Ethel Stephens. Eliza Woodson filed her application for widow's benefits on June 3, 1975. Rushell Woodson died May 25, 1970. Ethel married Frank Stephens on October 2, 1970. She applied for mother's benefits for Diane retroactively on January 15, 1971. Clearly, Ethel was not the wife of Rushell on June 3, 1975, almost five years after she married Stephens. While technically she may be said to be the widow of Rushell on June 3, 1975, she nevertheless was not entitled to benefits because she was married to Stephens. The language in this clause and a subsequent sentence in § 416(h)(1)(B) requires us to review the Congressional policy that permits two widows to be paid widow's benefits so long as such payments are not concurrent and the "legal" widow is given priority over the "deemed" widow.

The statute permits a "deemed" widow to receive survivor benefits even though the Secretary is on notice that a "legal" widow survived the "deemed" widow. As pointed out by Judge McKay in his dissent in *Martin v. Harris*, 653 F.2d 428, 433–36 (10th Cir. 1981), in practically every instance the "deemed" widow is considered a "legal" widow under subparagraph (A) because in

most instances she does not know about a previous, undissolved marriage and neither would the Secretary be under notice of such fact. Thus, all widows are treated as "legal," or subparagraph (A), widows unless and until a second "legal" widow applies for benefits and a determination must be made as to who has priority. If the second applicant is the "legal" widow, the payment to the "deemed" widow is stopped. Interestingly, even if the Secretary should know that a "legal" widow exists, the "deemed" widow nevertheless is entitled to benefits unless and until the "legal" widow applies for widow's payments:

> The entitlement to a monthly benefit . . . based on the wages . . . of [an] insured individual, of a person who would not be deemed to be a . . . widow . . . of such insured individual but for this subparagraph, *shall end with the month before the month . . . in which the Secretary certifies . . . that another person is entitled to a benefit under [§ 402(e)] if such other person is . . . [the] widow . . . under subparagraph (A). . . .*

42 U.S.C. § 416(h)(1)(B) (emphasis added). Thus, a "deemed" widow may be paid and then a "legal" widow sequentially, but not concurrently. This presents the question whether Congress meant to permit payment when the reverse situation occurs as here. The Secretary urges that the "legal" widow was paid benefits and that, although her marriage terminated those benefits, the "deemed" widow is not permitted sequentially to receive survivor benefits.

We conclude that Congress did not intend to reach this inconsistent result. It is obvious that Congress intended that there be no double-dipping and that a "legal" widow have precedence in the payment of survivor benefits over a "deemed" widow. Congress made it clear that notwithstanding the existence of a "legal" widow, a "deemed" widow nevertheless could be entitled to survivor benefits. Subparagraph (B), as written, presupposes the existence of a "legal" widow. Here, Eliza Woodson was married to Rushell when he died, they had lived together a number of years, and they had acquired a home together. Ethel Stephens has remarried. Only $563 has been paid from the wage earner's Social Security account. Rushell Woodson applied for a Social Security account number in July 1937, he was in the military service from March 1943 to December 1946, and he had taxable Social Security earnings from 1951 through 1970, the date of his death. Social Security payments do not come from government largess. It would be totally inequitable to deny Eliza Woodson survivor benefits in the face of this record and reading the statute as we do. Further, it would fail to pay heed to our decisions that require a liberal interpretation of the Social Security Act:

> That requirement would conflict with the remedial purposes of the Social Security Act, and the requirement for liberal construction in favor of coverage if such a construction is reasonable.

*Broussard v. Weinberger*, 499 F.2d 969, 970 (5th Cir. 1974).

We recognize that in the second holding contained in this opinion, we have only the company of the Second Circuit in *Rosenberg v. Richardson*, 538 F.2d 487 (2d Cir. 1976). Three circuits under similar but different facts have come to a different conclusion than we do in this interpretation of the statute. *Martin v. Harris*, 653 F.2d 428 (10th Cir. 1981); *Dwyer v. Califano*, 636 F.2d 908 (3d Cir. 1980); *Davis v. Califano*, 603 F.2d 618 (7th Cir. 1979). In deciding as we do in this case, we do not go as far as the holding of *Rosenberg, supra*. There, the court held that two widows could receive benefits concurrently. Our facts do not require us to reach that point and we do not intimate our thinking until faced with those facts. However, given the facts presented here and the Congressional intent, as we perceive it, to permit widows to receive survivor benefits sequentially, we believe that it is illogical to think that Congress intended such sequential payments only if the "deemed" widow is the first to receive benefits.

The judgment of the district court is REVERSED and the case is REMANDED for disposition in accordance with the holding herein.

**1174**

THORNBERRY, Circuit Judge, dissenting:

I would affirm. Appellant challenged Ethel Stephens' legal entitlement to mother's insurance benefits for the first time at oral argument. The argument that Ethel Stephens was not Rushell's widow at the time Eliza Woodson filed her application was not made at the administrative level. Neither the administrative law judge nor the district court had the opportunity to consider these issues. Nor did the appellee have the opportunity to adduce evidence or offer argument in support of its position. Appellant's failure to present these theories of recovery at the administrative level or even to the district court prevents this court from considering them for the first time on appeal.

Exhaustion of administrative remedies is a general prerequisite to judicial review of any administrative action. *Hedley v. United States,* 594 F.2d 1043, 1044 (5th Cir. 1979). The Supreme Court stated long ago that a reviewing court usurps an agency's function when it sets aside an administrative determination upon a ground not theretofore presented and deprives the agency of an opportunity to consider the matter, make its ruling, and state the reasons for its action. *Unemployment Compensation Commission v. Aragon,* 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). As the Court subsequently explained, the basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence: to make a factual record, to apply its expertise, and to correct its own errors. *Parisi v. Davidson,* 405 U.S. 34, 37, 92 S.Ct. 815, 818, 31 L.Ed.2d 17 (1974); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. National Association of Securities Dealers, Inc.,* 616 F.2d 1363, 1370 (5th Cir. 1980). As a general rule, then, a plaintiff who fails to raise an issue before the administrative agency will be precluded from raising it for the first time on appeal from the agency decision. *Beale v. Blount,* 461 F.2d 1133, 1140 (5th Cir. 1972); *Board of Public Instruction v. Finch,* 414 F.2d 1068, 1072 (5th Cir. 1969).

*See generally* 3 K. Davis, Administrative Law Treatise § 20.06 (1958, 1976 Supp. & 1980 Supp.) & cases cited therein.

The rule is flexible, however, and exceptional circumstances might prompt us, where injustice might otherwise result, to consider questions of law that were neither pressed nor passed upon by the court or agency below. *Finch, supra,* at 1072. In *Finch,* we dealt with agency action that was in excess of statutory authority, likely to result in individual injustice, disruptive of the legislative scheme, and contrary to an important public policy extending beyond the rights of the individual litigants. *Id.* at 1073. In stark contrast, we here deal with a plaintiff who, after hearings at the administrative and district court level, presents us with a completely new theory of recovery. Neither the law nor the evidence available to plaintiff has changed since the administrative hearings. Rather, plaintiff simply has done some additional homework and now presses a claim that she could have pressed below. In this regard, the case before us is rather *un*exceptional. Finally, I note that the theory premised on Ethel Stephens' status at the time Eliza Woodson filed her application was not offered at any level in this case, but was developed and considered by this court with neither guidance from the litigants nor the benefit of agency expertise.

Because I find the agency's action to be supported by substantial evidence on the record as a whole, I would affirm the judgment of the court below.