**Josephine H. RAY, Plaintiff-Appellee,**

**Delia M. Swift, Plaintiff-Appellant,**

v.

**Otis R. BOWEN, Secretary, Health and Human Services, Defendant-Appellee.**

No. 86–8272.

United States Court of Appeals, Eleventh Circuit.

March 16, 1987.

Mary Walton Whiteman, Decatur, Ga., for plaintiff-appellant.

Stephen S. Cowan, Nina Lore Hunt, Dennis R. Williams, Atlanta, Ga., for defendant-appellee.

Kenneth G. Levin, Jenny K. Mittelman, Atlanta, Ga., for Ray.

---

* Honorable Seybourn H. Lynne, Senior U.S. District Judge for the Northern District of Alabama, sitting by designation.

Before TJOFLAT and HILL, Circuit Judges, and LYNNE *, Senior District Judge.

HILL, Circuit Judge:

Delia M. Swift appeals from the district court's order denying her claim for Social Security widow's benefits as the legal widow of Edward Ray, pursuant to 42 U.S.C. §§ 402(e) and 416(h)(1)(A). The district court ordered the benefits payable on Edward Ray's account to go instead to the competing claimant, appellee Josephine H. Ray, as the "deemed widow" of Edward Ray under 42 U.S.C. § 416(h)(1)(B). Although the district court made a commendable effort at achieving a fair and equitable result, a dispassionate reading of section 416(h)(1)(B) requires us to reverse.

## BACKGROUND

Edward Ray ceremonially married Delia Ingram (now Delia Swift) in 1930. Edward left Delia in 1931, or possibly later in 1936. Sometime after their separation, Delia informed Edward that she was taking steps to divorce him, and asked him to sign some divorce papers. Edward, who was illiterate, made an "X" in the signature space on the papers. Despite Delia's representations, however, she and Edward were never divorced.

In 1936, Edward ceremonially married Josephine Hester (now Josephine Ray). At the time of the ceremony, both Edward and Josephine believed in good faith, based upon the papers he had signed, that Edward had been divorced from Delia and thus was free to marry Josephine. Edward and Josephine had six children during the course of their forty-one year marriage.

Delia and Rubin Swift began living together in 1943, and for nineteen years they held themselves out as Mr. and Mrs. Rubin Swift. Four children were born of this relationship. After Rubin died in 1962, De-

lia continued to refer to herself as Mrs. Delia Swift.[1]

In 1971 Edward Ray became ill and decided to take early retirement. At that time he applied for Social Security retirement benefits, including wife's benefits for Josephine. The application for benefits signed by Edward stated that he was previously married to Delia, but that they had been divorced. Upon a request by Social Security personnel for proof of his divorce, Edward contacted Delia and learned that in fact they had never been divorced. Social Security personnel then told Edward that if Josephine were to receive any benefits on his account, Delia must renounce her right to collect benefits as Edward's wife. In response to this advice, Edward and Josephine produced a handwritten letter, purportedly signed by "Mrs. D.M. Swift," [2] which stated:

> If Mr. Eddie Ray wish to get a devorce [sic] he may. I will not try to stop the devorce in any way. If there is a retirement pention [sic] of any kind I will not stand in the way of his other wife.

Edward and Josephine then began receiving Social Security benefits.

Edward Ray died on October 27, 1977. Three weeks later, Delia Swift applied for Social Security benefits as his widow. Ten days after Swift made her application, Josephine Ray also filed for widow's benefits on Edward's account. After an administrative hearing at which Swift denied having written the 1971 renunciation letter, the administrative law judge denied Ray's claim and awarded the benefits to Swift based upon the fact that Edward and Josephine Ray had never entered into a valid marriage.

Josephine Ray appealed the ALJ's decision to the district court, which remanded the case for further findings of fact. After remand, the Appeals Council considered and approved the ALJ's determination that Edward had an adequate opportunity to divorce Swift after 1971, and that his failure to do so left Swift entitled to the benefits as his legal widow. After again remanding the case to the Appeals Council, and subsequently conducting its own hearing, the district court reversed the ALJ and the Appeals Council and ordered the benefits to be paid to Josephine Ray. The court concluded that Swift had waived any right to collect widow's benefits by virtue of the 1971 letter, and alternatively, that Swift was estopped to deny that she relinquished her claim to the benefits in 1971. The district court thus concluded that Josephine Ray was entitled to receive the benefits as Edward Ray's "deemed widow" under 42 U.S.C. § 416(h)(1)(B). Swift then appealed to this court.

## DISCUSSION

Under the Social Security Act, the widow of a fully-insured individual is entitled to benefits upon satisfying the criteria set forth in 42 U.S.C. § 402(e)(1). There are two ways, however, that a person may qualify as the wage-earner's widow, and thus be eligible for the benefits under the Act. An applicant may qualify as a "legal widow" under section 416(h)(1)(A) if "the courts of the state in which [the insured individual] was domiciled at the time of death, ... would find that such applicant and such insured individual were validly married ... at the time he died." [3] An

---

1. Although during his lifetime Rubin Swift worked to support Delia and their children, he did not accrue enough quarters in employment covered by Social Security to become entitled to any benefits.

2. Throughout the course of this controversy, Swift has denied that she wrote or authorized the 1971 renunciation letter. The ALJ credited Swift's testimony on this issue, but the district court concluded that it was not bound by the ALJ's determination. The court went on to find that Swift's daughter, Linda Pearson, acting with Swift's express or implied authorization,

signed the letter and gave it to Edward Ray for presentation to the Social Security Administration. In deciding this appeal, we need not attempt to resolve this factual dispute.

3. 42 U.S.C. § 416(h)(1)(A) alternatively provides that even though the applicant and the deceased wage-earner were not validly married at the time of the wage-earner's death, such applicant could still qualify as his "legal widow" if she would, under the intestacy laws of the state in which he was domiciled at the time of his death, inherit his personal property as his widow.

applicant who is not a "legal widow" still may be eligible for benefits as a "deemed widow" if

such applicant in good faith went through a marriage ceremony with [the insured] individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual....

42 U.S.C. § 416(h)(1)(B).

 On the undisputed facts of this case, Josephine Ray qualifies as the "deemed widow" of Edward Ray under section 416(h)(1)(B). Based upon the papers that Delia had Edward sign, Edward and Josephine believed in good faith that Edward was divorced and thus free to marry Josephine. The fact that Delia had not followed through with the divorce constitutes a legal impediment not known to Josephine at the time of her marriage ceremony. At the same time, though, Delia Swift clearly qualifies as Edward's "legal widow" under section 416(h)(1)(A). Because of her prior, undissolved marriage to Edward, the courts of Georgia would find that Delia and Edward were still validly married at the time of his death.

Congress has anticipated such conflicting claims arising from the failure of individuals to dissolve existing marriages before entering into new "marital" relationships. Section 416(h)(1)(B) contains an exclusion clause which states that the language of that section granting rights to a "deemed widow" *does not apply*

if another person is or has been entitled to a benefit under [section 402(e) ] of this title on the basis of the wages and self-employment income of such insured individual and such other person is ... a ... widow ... of such insured individual un-

der subparagraph (A) at the time such applicant files the application....

Congress apparently intended that a deceased husband's benefits should go to his "deemed widow" where no applicant qualifies as his "legal widow." *Dwyer v. Califano,* 636 F.2d 908, 912 (3d Cir.1980). But where there is both an eligible "legal widow" and an eligible "deemed widow," Congress has explicitly resolved the conflict in favor of the "legal widow." This court on previous occasions has recognized this congressional policy of granting a "legal widow" priority over a "deemed widow." *See Gordon v. Bowen,* 801 F.2d 1275, 1276–77 (11th Cir.1986) ("deemed widow" entitled to benefits so long as "legal widow" is given priority in the event of an actual conflict); *Woodson v. Schweiker,* 656 F.2d 1169, 1172 (5th Cir.1981) [4] (section 416(h)(1)(B) gives "legal widow" priority over "deemed widow").

 The district court relied upon the equitable principles of waiver and estoppel in determining that Josephine Ray, the "deemed widow," should receive the benefits on Edward Ray's account. Under the plain language of the statute, however, when one claimant qualifies as a "legal widow," that ends the inquiry; it is the legal widow who is entitled to receive the benefits. As against a "legal widow," there simply is no basis, even equitable, for a "deemed widow" to prevail. In this area, Congress has at all times recognized the superior right of the "legal widow." *Martin v. Harris,* 653 F.2d 428, 433 (10th Cir. 1981).

Admittedly the equities in this case would appear to favor Josephine Ray, the "deemed widow," because of her good faith marriage to Edward and their forty-one years together. This court must, however, enforce the statute as it is plainly written, even though the application of such a strict rule in this case may produce a harsh result. Section 416(h)(1) mandates that appellant Delia Swift, who was married to

This provision, however, is not relevant to this case.

**4.** The Eleventh Circuit has adopted as precedent all decisions of the former Fifth Circuit ren-

dered prior to October 1, 1981. *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

Edward in a lawful ceremony and was never divorced, is entitled to the widow's benefits on his account. Therefore, the order of the district court is

REVERSED.