77 F.3d 574
 19 Employee Benefits Cas. 2916
 Stuart GRABOIS, in his fiduciary capacity as Assistant
Director; The New York City District Council of Carpenters
Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund,
Apprenticeship, Journeyman, Retraining, Education and
Industry Fund, and Supplemental Fund, Plaintiffs-Appellees,
v.
Kay JONES, Defendant-Appellant,
and
Annie Marie JONES, Defendant.
 No. 597, Docket 95-7278.
 United States Court of Appeals,
Second Circuit.
 Argued Dec. 20, 1995.
Decided Feb. 13, 1996.
 
 Before: ALTIMARI, MESKILL and CALABRESI, Circuit Judges.
 
 ORDER
 
 1
 This appeal from a judgment of the United States District Court for the Southern District of New York (Griesa, Chief Judge ), came on to be heard on the record from said district court.
 
 
 2
 We believe the issue presented in this appeal depends on the resolution of an unsettled question of New York state law. Therefore, on consideration of the briefs, appendix, record and the oral argument in this appeal, it is hereby ordered that the Clerk of the Court transmit to the Clerk of the New York Court of Appeals a Certificate in the form attached, together with a complete set of the briefs, appendix and record filed with this Court by the parties. This panel retains jurisdiction so that, after we receive a response from the New York Court of Appeals, we may dispose of the appeal.
 
 
 3
 Certificate to the New York Court of Appeals pursuant to McKinney's Revised 1993 New York Rules of Court § 500.17(b) (certification of unsettled questions of state law).
 
 
 4
 This dispute requires a determination of how certain union death benefits, administered by the appellees, should be distributed between two competing claimants, each of whom asserts an entitlement to the benefits as the surviving spouse of a deceased union member.
 
 
 5
 In October 1991, appellant Kay Jones submitted a Death Benefits Application to the benefit funds, stating that she was the lawful widow of Junior Jones, a former union member who had died in July 1991. Kay and Junior had been married on July 6, 1962, according to the marriage certificate that Kay submitted with her benefits request. The appellees began paying benefits to Kay on the basis of her claim, and continued to do so until May of 1992, when the fund administrator received a claim from Annie Marie Jones, stating that she was the legal widow of Junior Jones. Annie Marie sent a copy of a Certificate of Marriage attesting that she and Junior had been married in Robersville, North Carolina on October 16, 1948.[1] Annie Marie asserted that the marriage had never been dissolved, and that Kay was aware of that fact.
 
 
 6
 Kay and Junior had been married for almost 30 years prior to his death. During that time, she raised five of Junior's children--three of her own and two of Annie Marie's, and cared for him and covered expenses during his illness, which lasted from 1979 until his death in 1991. Although Kay was allegedly aware of Junior's earlier marriage, there is evidence that she believed that her marriage was necessarily legal because it had been performed by a New York judge. And there is no indication that Annie Marie was in any way involved with Junior, or with her children by Junior, at least since July 6, 1962, the date of Junior's marriage to Kay.
 
 
 7
 In 1994, appellees filed an interpleader complaint in the district court, pursuant to the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3)(B), (e)(1) and (f), seeking a declaration as to which of the two claimants was entitled to receive the benefits. Under ERISA, federal courts apply state law to determine who is the rightful beneficiary of a benefit plan. Because New York Domestic Relations Law provides that a purported marriage is void if one of the parties was already legally married, see N.Y.Dom.Rel.Law § 6 (McKinney's 1995), the district court found that Kay's marriage to Junior was void and concluded that she was therefore not entitled to any of Junior's benefits. The district court accordingly granted summary judgment for the plaintiffs, ordering the fund administrator to begin paying benefits to Annie Marie, and further ordering Kay to return those benefit payments she had already received. Kay appealed to this Court, arguing that the existence of a previous, undissolved marriage between Junior and Annie Marie should not eliminate Kay's right to some portion of Junior's death benefits since Kay married Junior in a formal ceremony, believing in good faith that her marriage was legal, and her marriage continued until Junior's death.
 
 
 8
 It is clear that under New York law Kay's marriage to Junior is not legally valid if Annie Marie's marriage was never dissolved. The question that we certify here is whether a second spouse whose marriage is void due to the existence of a prior, undissolved marriage, is nonetheless entitled to some portion of her or his spouse's death benefits when the second marriage was the result of a formal ceremony, undertaken in good faith, and the second marriage continued until the spouse's death.
 
 
 9
 The Court of Appeals of New York has never addressed this question. In fact, even those Appellate Division cases that handle somewhat analogous questions have not squarely considered whether the invalidity of the second marriage necessarily eliminates a second spouse's claims to all benefits. Several appellate division cases have considered the appropriate standard a court should employ when confronted with the claim that a second marriage is invalid because of the existence of a valid first marriage, and have concluded that the second marriage carries a presumption of validity. See, e.g., Seidel v. Crown Indus., 132 A.D.2d 729, 517 N.Y.S.2d 310 (3d Dep't 1987); In re Estate of Bihanskyj, 55 A.D.2d 836, 390 N.Y.S.2d 322 (4th Dep't 1976). Where the decision that a second marriage was invalid would create a substantial injustice, New York courts have been particularly loath to do so. See Dolan v. Celebrezze, 381 F.2d 231, 236-38 (2d Cir.1967) (Friendly, J.) (canvassing New York cases and noting that the presumption favoring the validity of the second marriage varies its force with the attendant facts and circumstances).
 
 
 10
 Thus, while New York decisions evince a reluctance to find a second marriage void where such a finding will result in an apparent injustice, New York law has not established whether the injustice that is created by holding the second marriage void may also be ameliorated by the application of a rule that would, under appropriate circumstances, recognize an entitlement to some benefits on the part of the second spouse, even where the second marriage is found to be invalid.
 
 
 11
 Such an ameliorative rule applies in other jurisdictions. For example, the Uniform Marriage and Divorce Act, directly adopted by at least four states,[2] provides that a "person who has cohabited with another to whom he is not legally married in the good faith belief that he was married to that person is a putative spouse" and that "rights acquired by a putative spouse do not supersede the rights of the legal spouse ... but the court shall apportion property, maintenance, and support rights among the claimants as appropriate in the circumstances and in the interests of justice." Unif. Marriage & Divorce Act § 209 (1973).[3]
 
 
 12
 Similarly, this Court, when presented with somewhat analogous circumstances-- involving, however, the interpretation of federal laws--has found that a second spouse whose marriage was undertaken in good faith retains a right to some benefits, even in the face of a competing claim by the first--and, under applicable state law, explicitly the legal--spouse. See Capitano v. Secretary of Health & Human Serv., 732 F.2d 1066 (2d Cir.1984); Kirkland v. Railroad Retirement Bd., 706 F.2d 99 (2d Cir.1983); Rosenberg v. Richardson, 538 F.2d 487 (2d Cir.1976).
 
 
 13
 In Capitano and Rosenberg, this Court considered the appropriate application of a provision of the Social Security Act, 42 U.S.C. § 416(h)(1)(B), which allows for benefits to be paid to the widow of a second marriage, under certain circumstances, even where that marriage is void under the relevant state law. First, we observed that some states (for example, California, see Estate of Ricci, 201 Cal.App.2d 146, 19 Cal.Rptr. 739 (1962)) granted validity to a second marriage undertaken in good faith, and that in those states a putative spouse had always been entitled to at least a portion of the benefits. See Capitano, 732 F.2d at 1068. But, in states where a second marriage was rendered void by a pre-existing, valid first marriage, even widows of marriages undertaken in good faith were automatically cut out of any entitlement to benefits under the old version of the Social Security Act. See id; Rosenberg, 538 F.2d at 489. We then noted that Congress chose to "remedy th[e] evil" created when "women, whose husbands paid social security taxes for years, found themselves ineligible for the benefits intended for them, because marriages contracted in good faith were subsequently found invalid." Rosenberg, 538 F.2d at 489. It did so by granting benefits to the second spouse where she "in good faith went through a marriage ceremony," but only where the legal first spouse had not appeared to claim the benefits. 42 U.S.C. § 416(h)(1)(B); see also Capitano, 732 F.2d at 1069-70. Capitano and Rosenberg, however, involved situations in which both a first and a second wife had filed benefit claims as widows of an insured beneficiary. Despite the strong statutory language to the effect that a second wife loses her statutory right to Social Security benefits as soon as the legal widow comes forward to claim those benefits, 42 U.S.C. § 416(h)(1)(B), this Court interpreted the Act to allow each woman a certain level of recovery, so long as the total recovery did not exceed the amount that would have been payable to a single claimant. See Capitano, 732 F.2d at 1069-70 (affirming the interpretation, as set forth originally in Rosenberg, 538 F.2d at 487).
 
 
 14
 Kirkland involved the interpretation of a provision of the Railroad Retirement Act, 45 U.S.C. § 231a(d)(4), which itself incorporates 42 U.S.C. § 416(h)(1)(B). Again this Court, in considering the claims of a second spouse, applied the equitable principle that, although the total payments made should not exceed those provided for a single claimant, the available benefits should be divided between the two claimants. See Kirkland, 706 F.2d at 104.
 
 
 15
 What these cases and the Uniform Marriage and Divorce Act make clear is that some jurisdictions do not make the invalidity of a second marriage determinative of the appropriate division of benefits between two surviving putative spouses. New York has not addressed this question. Given the concern evinced by the New York courts about the injustice that can be created by holding a second marriage to be void, we are uncertain as to whether the Court of Appeals, a) would follow a rule analogous to that provided in the Uniform Marriage and Divorce Act, or to that articulated in this Court's interpretation of federal benefits laws, or b) would, instead, give full benefits to the "legal" widow, however tenuous her ultimate relationship to the deceased. In the absence of any controlling precedent, we are reluctant to decide the question. We do recognize, however, that the unsettled question here presented may not arise with sufficient frequency to justify the acceptance of this certification. In that event, we will of course resolve the issue ourselves.
 
 
 16
 We certify the question because--although it may not be a situation likely to arise with much frequency--for individuals, like Kay Jones and Annie Marie Jones, who are involved in disputes of this sort, the stakes are very high. Moreover, the resolution of this question is important so that benefit fund administrators, confronted with circumstances such as those presented here, may have a clearly settled rule in cases involving competing claims of entitlement.
 
 
 17
 Because benefit disputes are now generally controlled by ERISA, and hence almost always are tried in the federal courts, see 29 U.S.C. § 1132(e)(1) (providing for nearly exclusive federal jurisdiction over ERISA disputes), the New York Court of Appeals is unlikely to be able to consider the question presented by this case on review of a New York court decision. Thus, not only will this question not be presented to the Court of Appeals except through certification, but since federal courts will most often be the courts called upon in such cases, these courts will continue to apply an uncertain New York law, unless the question is settled through certification.
 
 
 18
 The foregoing question is hereby certified to the Court of Appeals for the State of New York as ordered by the United States Court of Appeals for the Second Circuit.
 
 
 
 [1]
 Annie Marie apparently submitted two different marriage certificates to the benefits fund. The certificate introduced in May 1992 listed her name as Annie Marie Matthews. In January 1993, when Annie Marie submitted a formal Death Benefits Application, she provided a different marriage certificate, giving her maiden name as Annie Marie Andrews
 
 
 [2]
 See Colo.Rev.Stat. § 14-2-111 (1995); Ill.Ann.Stat. ch. 750, p 5/305 (Smith-Hurd 1995); Minn.Stat. § 518.055 (1994); Mont.Code Ann. § 40-1-404 (1994)
 
 
 [3]
 We are not suggesting, of course, that the Uniform Marriage and Divorce Act applies in New York. The Act does indicate, however: a) that a determination of the invalidity of a marriage does not automatically settle the question--as to which New York courts have not spoken--of the allocation of benefits; and b) that at least some jurisdictions, and the drafters of the uniform act, do not consider an apportionment under such circumstances to be administratively infeasible