Willie Mae CARTER, Plaintiff,

v.

Joseph A. CALIFANO, Jr., Secretary,
Health, Education and Welfare,
Defendant.

Civ. A. No. 78–878 H.

United States District Court,
W. D. Pennsylvania.

June 7, 1979.

Theodore A. McConnell, Kirkpatrick, Lockhart, Johnson & Hutchison, Pittsburgh, Pa., for plaintiff.

Stephen I. Goldring, Asst. U. S. Atty., Pittsburgh, Pa., for defendant.

OPINION

DIAMOND, District Judge.

This action was filed under 42 U.S.C. § 405(g) seeking review of a final decision by the Secretary of Health, Education, and Welfare (Secretary) which determined that plaintiff is not the "widow" of one Ray Carter, deceased, within the meaning of 42 U.S.C. § 416(h)(1) and, therefore, is not entitled to widow's social security insurance benefits under 42 U.S.C. § 402(e). Under consideration is the Secretary's motion for summary judgment which, for the reasons set forth below, will be granted.

The insured, Ray Carter, married Julia Carter in 1915 in the state of Virginia. In 1928 Ray obtained a divorce from bed and board (a mensa et thoro) in King William County, Virginia, on the grounds of desertion and abandonment. He subsequently moved to Pittsburgh, Pennsylvania, where he married plaintiff in 1929. Plaintiff knew of Mr. Carter's prior marriage, but believed that it had been dissolved by a complete divorce (a vinculo matrimonii) and that, therefore, he had the capacity to remarry. Ray Carter died on April 13, 1973, at which time he was still "married" to and living with plaintiff in the Pittsburgh area.

Following Carter's death, plaintiff filed for and received widow's social security insurance benefits under § 402(e). In August of 1975, however, Julia also made application for widow's benefits, claiming to be the lawful wife of Ray Carter. Thereafter, the Social Security Administration (Administration) made the determination that plaintiff was not entitled to future benefits under § 402(e) and, accordingly, terminated said payments on February 3, 1977.

Following that action by the Administration, plaintiff requested and received a hearing on the termination of her payments. The hearing examiner rendered a

decision in favor of the plaintiff, finding that she, not Julia, was the "widow" of Ray Carter under § 416(h)(1). That decision, however, was reversed by the Administration's Appeals Council, and this action seeking review followed.

Under the provisions of § 416(h)(1), there are three ways in which one may qualify as the "widow" of an insured wage earner: 1) if the state in which the deceased insured was domiciled at the time of his death would find that the applicant and the insured were validly married; 2) if an applicant, though not validly married to the insured, would be accorded the same status with respect to the devolution of intestate property as a spouse of the insured by such state; or 3) if an applicant not otherwise eligible did in good faith go through a marriage ceremony with the insured which, but for a legal impediment not known to the applicant, would have been regarded as a valid marriage, *and* there is no other person who would qualify as a widow under the first two circumstances.

Plaintiff concedes that she cannot qualify under the first condition set out above. However, she does contend that she qualifies under both the second and third conditions. Reluctantly, we must disagree.

Plaintiff first argues that she would be accorded a status similar to that of a spouse with respect to the devolution of intestate property because Julia would be barred from participating in Ray Carter's estate. Plaintiff argues that Julia is barred because 1) under Pennsylvania law, 20 Pa.C.S.A. § 2106(b), Julia's abandonment of the insured would prevent her participation in his intestate estate; 2) the Virginia divorce decree, which would be entitled to full faith and credit by courts of this state, *Williams v. North Carolina*, 317 U.S. 287, 63 S.Ct. 207, 87 L.Ed. 279 (1942); *Commonwealth ex rel. McVay v. McVay*, 383 Pa. 70, 118 A.2d 144 (1955); *Smith v. Smith*, 364 Pa. 1, 70 A.2d 630 (1950), expressly divested her of

any interest in Ray's estate[1]; or 3) her conduct created the impression in plaintiff's mind that she (Julia) was not Ray's wife, a circumstance which would estop Julia's participation under *Watt Estate*, 409 Pa. 44, 185 A.2d 781 (1962).

Assuming for the moment that Julia is in fact barred from participating in Ray's estate, we fail to see how that circumstance would inure to the benefit of plaintiff. For, a determination that Julia had no right to participate in the intestate estate of Ray Carter would not thereby create such a right in plaintiff, who would still have to establish that she was one qualified by her legal relationship to decedent, i. e., his spouse, to participate under Pennsylvania law in the intestate devolution of his estate. 20 Pa.C.S.A. § 2101 et seq. This, plaintiff would not be able to do because, as we demonstrate below, the decedent was still lawfully married to Julia, and, of course, at the same time could not have been married to plaintiff. The fact that Julia could not participate in intestate succession in no way altered her *status as Ray's wife*.

Plaintiff also argues similarly that she qualifies as a "widow" under the third condition of § 416(h)(1) because she went through a marriage ceremony in good faith with Ray Carter and no other person qualifies as Ray's widow, specifically not Julia because of the fact that she would not be permitted to participate in his estate. We accept as accurate the hearing examiner's finding that plaintiff indeed was a good faith participant in a wedding ceremony with Ray Carter. However, again, we disagree with his conclusion, and plaintiff's argument, that if Julia is disqualified to participate in Ray's estate that fact would in effect invalidate Julia's marriage to him.

Section 20–116 of the Virginia Code explicitly states that a party to a divorce from bed and board *may not remarry* during the

---

1. The decree stated: "And the Courth [sic] doth . . . order and decree that the parties to this suit be perpetually separated and protected in their persons and property and that each other be deprived of all interest in the estate of the other either now owned or hereafter acquired."

life of the other.[2] And the Virginia courts hold that the effect of Section 20–116 is that the *bond of matrimony still exists* between parties to a divorce from bed and board:

"*In the case of a divorce a vinculo the marriage bond is completely severed, and there is no continuance of the marital status. But when a divorce a mensa et thoro is decreed there is no severance of the marriage bond. The marital status is not affected thereby; and the parties remain husband and wife,* though authorized by the decree to live in separation. Under the Virginia statutes relating to divorce a mensa et thoro, as at common law, the door of reconciliation is held open in the hope that the parties may, without a severance of the marriage bond ever having taken place, become reconciled to each other and resume their normal marital relations." (emphasis supplied) *Gloth v. Gloth*, 154 Va. 511, 153 S.E. 879 (1930)

Thus it is clear that Julia was validly married to Ray at the time of his death and legally is entitled to the widow's insurance benefits. The fact that Julia may have no right to participate in Ray's *estate* does not bar her receipt of these benefits for the simple reason that they *are not part of his estate*; they are payments directly from the government to the widow and would not go to the insured's *estate* if no widow existed.

The Appeals Council based its decision against plaintiff on Section 20–116 and *Gloth*, finding that Julia was validly married to Ray at his death and, therefore, entitled to widow's benefits under the first of the three qualifying circumstances of § 416(h)(1). In light of our discussion above we are compelled to affirm that decision and grant the defendant Secretary's motion for summary judgment. However, we do so with reluctance. If we were sitting as a common law court of equity unfettered by statute, plaintiff, who apparently rendered years of faithful service and companionship to the decedent and certain of his children, would receive the contested benefits. But it is our duty to apply the law, not draft it, and therefore we are obliged to deny plaintiff relief. An appropriate order granting the motion will be entered.

---

2. Section 20·116 of the Virginia Code provides as follows:

In granting a divorce from bed and board, the court may decree that the parties be perpetually separated and protected in their persons and property. Such decree shall operate upon property thereafter acquired, and upon the personal rights and legal capacities of the parties, as a decree for a divorce from the bond of matrimony, except that neither party shall marry again during the life of the other.