**Mary T. HUNTER, Widow of David L. Hunter, SSN 226–32–6445, Plaintiff,**

v.

**Louis W. SULLIVAN, Secretary of Health and Human Services, Defendant.**

**Civ. A. No. 89–0077–R.**

United States District Court, W.D. Virginia, Roanoke Division.

Aug. 25, 1989.

Claude D. Carter, Glenn B. Hammond, Roanoke, Va., for plaintiff.

Jean Barrett, Asst. U.S. Atty., Roanoke, Va., for defendant.

## MEMORANDUM OPINION

TURK, Chief Judge.

Plaintiff has filed this action seeking review of the final decision of the Secretary of Health and Human Services denying her claim for widow's insurance benefits under § 202(e) of the Social Security Act, 42 U.S.C. § 402(e), as amended. Jurisdiction of this court is pursuant to § 205(g) of the Act, 42 U.S.C. § 405(g). As reflected by the memoranda and arguments submitted by the parties, the issues now before this court are whether the Secretary's final decision is supported by "substantial evidence," and if it is not, whether plaintiff has met the burden of proof as prescribed by and pursuant to the Act in establishing entitlement to benefits. Stated briefly, "substantial evidence" has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. *Richardson v. Perales*, 402 U.S. 389, 400, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971).

The plaintiff, Mary T. Hunter, was born on November 8, 1927. On October 19, 1987, Mrs. Hunter filed a claim for widow's insurance benefits on the earnings record of David L. Hunter. It is undisputed that at the time of his death on March 3, 1985, Mr. Hunter was a fully insured individual within the meaning of the Social Security Act. It is also undisputed that, as of the date of Secretary's final decision, Mrs. Hunter was not married and had attained the age of 60. In filing her application for widow's insurance benefits, plaintiff relied on the undisputed facts noted above as well as on the assertion that she is the widow of David L. Hunter.

Mrs. Hunter's claim for benefits was denied upon initial consideration and reconsideration. She then requested and received a *de novo* hearing and review before an Administrative Law Judge. In an opinion dated August 27, 1988, the Law Judge also determined that plaintiff is not entitled to widow's insurance benefits. Stated suc-

cinctly, the Law Judge found that plaintiff is not the widow of David L. Hunter. The Law Judge found that plaintiff had been married to one Thomas Alfred McCormick on November 27, 1946, and that she did not obtain a final and absolute divorce from Thomas A. McCormick until June 7, 1988. Accordingly, the Law Judge ruled that plaintiff and David L. Hunter were not legally married, and that Mrs. Hunter cannot now qualify as the widow of David L. Hunter for purposes of her application for widow's insurance benefits. The Law Judge's opinion was adopted as the final decision of the Secretary by the Social Security Administration's Appeals Council. Having exhausted all available administrative remedies, Mrs. Hunter has now appealed to this court.

As noted by the Administrative Law Judge, disposition in this case turns on a determination as to whether plaintiff qualifies as the widow of the deceased wage earner.[1] For purposes of such a determination, 42 U.S.C. § 416(h)(1)(A) provides, in pertinent part, as follows:

> An applicant is the wife, husband, widow, or widower of a fully ... insured individual for purposes of this title if the courts of the State in which such insured individual ... was domiciled at the time of his death ... would find that such applicant and such insured individual were validly married ... at the time he died. If such courts would not find that such applicant and such insured individual were validly married at such time, such applicant shall, nevertheless, be deemed to be the wife, husband, widow, or widower, as the case may be, of such insured individual if such applicant would, under the laws applied by such courts in determining the devolution of intestate personal property, have the same status with respect to the taking of such property as a wife, husband, widow, or widower of such insured individual.

Furthermore, an applicant may also be deemed to be the spouse of a deceased wage earner if the applicant married the

---

1. It is undisputed that plaintiff meets all the other conditions for entitlement to widow's insurance benefits.

wage earner in good faith, without knowing of a legal impediment to the validity of the marriage, and if the applicant was living with the wage earner at the time of the wage earner's death. In this regard, 42 U.S.C. § 416(h)(1)(B) provides, in pertinent part, as follows:

> Such applicant in good faith went through a marriage ceremony with such individual resulting in a purported marriage between them which, but for a legal impediment not known to the applicant at the time of such ceremony, would have been a valid marriage, and such applicant and the insured individual were living in the same household at the time of the death of such insured individual ... such purported marriage shall be deemed to be a valid marriage. The provisions of the preceding sentence shall not apply (i) if another person is or has been entitled to a benefit ... on the basis of the wages and self-employment income of such insured individual and such other person is (or is deemed to be) a wife, widow, husband, or widower of such insured individual under subparagraph A....

On appeal to this court, plaintiff has emphasized the provisions of § 416(h)(1)(A) in arguing that the Secretary erred in determining that she is neither the legal widow nor the "deemed" widow of David L. Hunter. Plaintiff has submitted several different contentions in support of her position. However, for reasons stated by the Secretary in a comprehensive and well considered memorandum in support of his motion for summary judgment, the court has concluded that the Secretary has the better of the argument under § 416(h)(1)(A). The court finds it unnecessary to evaluate the positions of the parties under § 416(h)(1)(A) in any great detail, inasmuch as the court has also concluded that plaintiff has met the burden in establishing that she is the "deemed" widow of David L. Hunter, pursuant to the provisions of § 416(h)(1)(B).

In finding that plaintiff could not be "deemed" to have been validly married to the deceased wage earner pursuant to the provisions of § 416(h)(1)(B), the Law Judge relied on two separate findings. First, the Law Judge held that Mrs. Hunter did not enter into the marriage ceremony with David L. Hunter in good faith, in that she knew, or should have known, that she had not been awarded an absolute and final divorce from Thomas A. McCormick. Second, the Law Judge found that Mrs. Hunter and the deceased wage earner were not living in the same household at the time of his death.[2] The court believes that the Law Judge's first finding is not supported by substantial evidence. While the Law Judge's second finding is undisputed, the court believes that the reasons for the separation of Mr. and Mrs. Hunter were such as to render the fact of separation less than conclusive for purposes of § 416(h)(1)(B). Given the nature of the Hunters' relationship during the period of separation prior to Mr. Hunter's death, and considering the remedial character of the provisions of § 416(h)(1)(B), the court must conclude that this case falls within the relatively narrow ambit of § 416(h)(1)(B).

The plaintiff married Thomas A. McCormick on November 27, 1946, in the State of Virginia. A child was born to that marriage. On August 1, 1950, plaintiff obtained a divorce *a mensa et thoro* (divorce from bed and board) from Mr. McCormick. The effect of such a divorce is to create a permanent, legal separation. Va.Code § 20–116 (1983). It is undisputed that plaintiff did not obtain a decree of divorce *a vinculo matrimonii* (divorce from bond of matrimony) or final divorce until June 7, 1988. *See, gen.,* Va.Code § 20–121 (1983).

At the time of the administrative hearing, plaintiff testified that she believed that the decree of divorce from bed and board received in 1950 was sufficient to terminate her marriage to Mr. McCormick. (TR 50–51). Similarly, plaintiff testified that she considered herself free to enter into a legal marriage with David L. Hunter on August 22, 1954. It is undisputed that, for approximately 30 years, plaintiff and Mr. Hunter

---

**2.** The Law Judge also found that there is no evidence of any other living legal spouse who is, or was, entitled to monthly benefits on Mr. Hunter's earnings record.

lived together as husband and wife. A child was born to their marriage. It is undisputed that the Hunters were regarded as a married couple within their community. It is also undisputed that Mr. McCormick also remarried. (TR 46–47).

On December 19, 1984, shortly before Mr. Hunter's death on March 3, 1985, the Hunters separated. Plaintiff testified that up until about the last two years prior to Mr. Hunter's death, he had been a "jewel" of a husband. (TR 40). She related that he fully supported her, and that their marriage was very satisfactory. (TR 40). However, plaintiff testified that, during the late 1970's, Mr. Hunter's behavior deteriorated. (TR 40–41). Mrs. Hunter stated that she eventually had to seek outside help. In responding to questions from her attorney at the time of the administrative hearing in this case, Mrs. Hunter summarized the marital difficulties as follows:

Q [Atty] Could you describe for the purposes of this hearing what caused you to go to the Circuit Court in the City of Roanoke and ask for help?

A [Plaintiff] Yes, sir. Well, he started staying out real late at night, and he was drinking heavily, and when he'd come in he'd—if I'd say anything to him he'd want to beat me up. So, at one or two times he took his fist and hit me in my head and—

Q Did you ever have occasion to call the police to—to give you assistance?

A Yes, I did. So—and so he locked himself in his room for two months. He started on the 6th of October and he locked himself in the room until I had him put out of the house the 19th of December of '84.

Q Were you afraid for your own safety?

A Yes, sir.

Q Did you ever go forward with the steps to obtain a final divorce from him or a—

A I had filed for a divorce, but he went to Court one time before he died.

Q Did the court order Mr. Hunter to pay you certain support monies?

A Yes, sir, $1,000.00 per month, and I received one check. (TR 40–41).

The record confirms that on December 19, 1984, Mrs. Hunter filed for a divorce *a mensa et thoro* from Mr. Hunter in the Circuit Court for the City of Roanoke on the grounds of constructive desertion. In her bill of complaint, plaintiff cited reasons for her request as follows:

That during the marriage of the parties the defendant has vexed, chided, humiliated and embarrassed complainant before friends and acquaintances; that he has constantly nagged and harassed complainant and has both physically and verbally abused her; that he has made threats against her and has struck her, on one occasion it becoming necessary for her to call the police; that complainant would further show unto the Court that she has been a dutiful and faithful wife and homemaker and has made a sincere effort to make her marriage succeed; that notwithstanding her efforts the defendant has wholly failed to cooperate and has been both unhappy and dissatisfied with the marriage; that because of the conditions which have existed in the marital abode complainant has lost weight, has become highly nervous and said treatment has been an impairment to her mental and bodily welfare; that because of the unpredictable moods of the defendant and upon learning that a suit for divorce has been instituted complainant is in fear of the treatment to which she will be subjected at the hands of the defendant; that complainant is advised and alleges that the defendant's conduct constitutes deserrtion as of the filing of this suit and the entry of the injunction herein prayed for. (TR 115–116).

On that same day, a circuit court judge entered an order requiring Mr. Hunter to vacate the marital home. (TR 99–102). The record also reveals that on February 20, 1985, following a hearing at which both parties appeared, in person and by counsel, Mrs. Hunter was awarded a decree providing for temporary spousal support during pendency of the suit. As indicated above, it was not until sometime after Mr. Hunt-

er's death that plaintiff finally discovered that it was necessary to obtain a final divorce decree with regard to her marriage with Mr. McCormick.

Considering all of these circumstances, the court believes that plaintiff has met the burden of proof in establishing that she should be "deemed" to be the widow of David L. Hunter, pursuant to the provisions of 42 U.S.C. § 416(h)(1)(B). The Law Judge found that Mrs. Hunter had failed to meet the requirements of § 416(h)(1)(B) in that she did not enter into the marriage ceremony with Mr. Hunter in good faith, because she knew or should have known that she had not been awarded an absolute divorce from Thomas A. McCormick. However, the court believes that this determination is clearly not supported by substantial evidence. While Mrs. Hunter reached the tenth grade in school, the intricacies and terminology of the Virginia divorce procedure often prove the subject of much confusion even for persons of much greater academic attainment. Following the divorce from bed and board in 1950, both Mr. McCormick and the plaintiff apparently understood that each was free to remarry. There is no evidence in the record which suggests that Mrs. Hunter had any contrary understanding at any time during Mr. Hunter's life. Furthermore, Mrs. Hunter actually undertook legal proceedings to obtain a divorce from Mr. Hunter, after having been victimized by physical abuse, a circumstance which clearly suggests that she was unaware of any legal impediment to her second marriage at that particular time. Mr. Hunter appeared with counsel during the initial divorce proceedings, a circumstance which confirms that he had no knowledge of any such legal impediment. Pursuant to court's order, Mr. Hunter continued to provide plaintiff's support even during their short separation.

Under 42 U.S.C. § 416(h)(1)(B), it is required that the applicant acted in good faith in entering into a marriage ceremony with the wage earner. As regards this question of good faith, the court believes that the comments of the Administrative Law Judge at the conclusion of the administrative hearing properly summarize the facts of the matter:

> But in any case, the point I'd like to make is that this type of case is difficult to decide, because the claimant in this case was married to this man, she thought legally, for a long, long time and had a child by him. So, I don't think there's any doubt about their good faith in entering into a second marriage. (TR 63).

The court finds that plaintiff has met the burden of proof in establishing that she entered into the marriage with Mr. Hunter in good faith, and that she was unaware of any impediment to that marriage.

The remaining requirement of § 416(h)(1)(B) presents a more difficult problem in terms of plaintiff's particular case. The statute requires that in order to be "deemed" a widow under § 416(h)(1)(B), the applicant must have been living in the same household with the wage earner at the time of his death. The Administrative Law Judge found that Mr. and Mrs. Hunter were not living together at the time of his death, and this finding is undoubtedly correct. However, given the reasons for the couple's separation, the court concludes that this circumstance is not of controlling legal significance for purposes of plaintiff's claim for benefits.

It appears to the court that § 416(h)(1)(B) was clearly intended to be of remedial character. The statute creates a saving provision for the survivors of marital unions which were intended by both parties to be valid and binding but which, due to some legal insufficiency, were invalid as a matter of law. The court believes that the statute should not be applied in such a manner as to disrupt this remedial purpose.

For purposes of implementation of § 416(h)(1)(B), the Secretary has promulgated certain regulatory provisions set forth under 20 C.F.R. § 404.347. This regulation recognizes that short-term separations should not necessarily be deemed controlling for purposes of determining whether a couple was "living in the same household" at the time of the death of one

spouse. The regulation provides, in pertinent part, as follows:

> Living in the same household means that you and the insured customarily lived together as husband and wife in the same residence. You may be considered to be living in the same household although one of you is temporarily absent from the residence. An absence will be considered temporary if it was due to service in the U.S. Armed Forces. An absence of less than 6 months is also considered temporary if neither you nor the insured were outside of the United States during this time and the absence was due to business or employment; or to confinement in a hospital, nursing home, other medical institution, or a penal institution. Other absences may be considered temporary if it is shown that you and the insured could have reasonably expected to live together in the near future.

In the case of Mr. and Mrs. Hunter, it is undisputed that the separation shortly before Mr. Hunter's death was less than six months in duration. More importantly, the evidence of record reveals that at the time of Mr. Hunter's death, both parties considered their relationship as husband and wife to be continuing, at least as of that time, even though Mrs. Hunter had undertaken to dissolve their marriage based on physical and mental cruelty. There is no evidence which suggests that Mrs. Hunter would have chosen to live apart from Mr. Hunter, had it not been for the physical abuse she suffered in the weeks prior to their separation. Mr. Hunter's absence from their home was mandated by court order. Even as it was, Mr. Hunter continued to support plaintiff, pursuant to a court order under which the couple's relationship was clearly deemed to be that of husband and wife.

It appears to the court that the remedial intent of § 416(h)(1)(B) would be frustrated if it is to be concluded that the couple's court-ordered separation during the last months of Mr. Hunter's life was sufficient to overcome the inference which can be drawn from the very satisfactory marital relationship which the couple enjoyed for many years. Once again, the court finds the observations of the Administrative Law Judge in his formal opinion to be most persuasive:

> Despite the fact that they were living separate and apart due to his misconduct towards the claimant, I do not think the intent of the statute is to deny benefits to a "deemed" widow simply because a deceased wage earner is absent from the household in compliance with a court order. (TR 15).

While the Law Judge went on to indicate that he considered himself bound by the technical requirements of the statute, the court concludes that the statutory intent, as identified by the Law Judge, must be considered dispositive of this case.

In his memorandum in support of his motion for summary judgment, the Secretary admonishes the court not to decide this case on the basis of the weight of the equities, in derogation of the plain meaning of the statute. In support of this argument, the Secretary has cited a number of other cases involving applications for widow's insurance benefits. *See Ray v. Bowen*, 812 F.2d 675 (11th Cir.1987); *White v. Schweiker*, 709 F.2d 247 (3d Cir.1983); *Dwyer v. Califano*, 636 F.2d 908 (3d Cir. 1980); *Carter v. Califano*, 473 F.Supp. 517 (W.D.Pa.1979). The Secretary notes that, in each of these cases, the claim of an applicant seeking "deemed" widow's status was denied, despite many decades of good faith marriage. Thus, the Secretary argues that the literal meaning of the statute was effected even in the face of compelling equitable considerations. However, the court notes that in each of these cases, the claim was ultimately denied under 42 U.S.C. § 416(h)(1)(B) because some other person, *i.e.*, legal widow, was entitled to benefits on the same wage earner's account. Thus, it is true that the claims were denied based on a literal meaning of the statute, in that the statute clearly precludes entitlement by a "deemed" spouse should a legal spouse also claim entitlement. The instant case is readily distinguishable, inasmuch as there are no dual claims of entitlement.

It is undisputed that the plaintiff was the only spouse which Mr. Turner ever had, and that the couple lived together as husband and wife for almost thirty years. The court remains convinced that in such circumstances, it is intended that the statute be given a remedial interpretation, so as to provide equitable treatment in an appropriate situation, as long as there is no dual entitlement as would necessitate an unnecessary duplication of benefits.

For the reasons as stated, the court concludes that plaintiff has met the burden in establishing that she must be "deemed" to be the widow of David L. Hunter for purposes of her application for widow's insurance benefits. The court concludes that the Secretary's final decision to the contrary is not supported by substantial evidence. Defendant's motion for summary judgment must be denied. Given this finding, and inasmuch as it is undisputed that plaintiff meets all the other conditions for entitlement to widow's insurance benefits as prescribed by and pursuant to the Act, judgment will be entered for plaintiff. The final decision of the Secretary will be reversed and the case remanded for the establishment of proper benefits. An appropriate judgment and order will be entered this day.

The clerk is directed to send certified copies of this opinion to all counsel of record.

### ORDER

For reasons stated in a Memorandum Opinion filed this day, it is

### ADJUDGED AND ORDERED

as follows:

1. defendant's motion for summary judgment is denied;

2. the final decision of the Secretary is reversed with judgment entered in favor of plaintiff; and

3. the case is remanded to the Secretary for the determination and award of appropriate back benefits.

The clerk is directed to send certified copies of this judgment and order to all counsel of record.