BEATRICE CAMPBELL, Petitioner, *v.* GEORGE E. CAMPBELL, Respondent.

Domestic Relations Court of City of New York, Family Court Division, Queens County, October 15, 1937.

*Frederick M. Garfield*, for the petitioner.

*Samuel Widder*, for the respondent.

O'BRIEN, J. The petitioner in this proceeding charges the respondent with non-support and invokes the power of this court to impose and enforce the duty upon the respondent of providing support.

Prior to 1911 the petitioner was a resident of the State of Maryland. About this time she came with her father and mother to New York. The petitioner and her father and mother originally came from Maryland. Other branches of relatives remained in Maryland and still live there.

On February 25, 1911, the petitioner married one Harry Martin. Both husband and wife then resided in the State of New York. In the year 1912 petitioner was deserted by her husband, Martin.

Thereafter she returned to and again made her residence in the State of Maryland. While residing there she began an action for divorce from Harry Martin in the courts of Maryland and obtained a decree of absolute divorce which also awarded to her a child of five years, one Lloyd Martin.

The respondent knew that she originally lived in Maryland. He visited petitioner's relatives in Maryland with the petitioner before her divorce from Martin. A certified copy of the divorce proceedings was offered in evidence by respondent and admitted in the instant proceeding.

These certified proceedings indicate that Martin deserted the petitioner in the year 1912. The record of these proceedings in evidence herein establishes that the petitioner was at the time of the divorce and for two years prior thereto a resident of Maryland, and the divorce decree of Maryland so finds this as a fact.

Furthermore, the fact of petitioner's residence in Maryland was testified to by other witnesses and evidenced by envelopes with canceled stamps and postmarks, indicating letters sent to her there, to Baltimore, Hagerstown and Meyersville, by respondent. There was also a letter from the respondent himself, addressed to petitioner in Maryland in care of her aunt, one Stockert, to which further reference follows below.

Prior to the granting of the divorce, however, the respondent was and he still is a member of the bar of the State of New York and of this judicial district. He was concerned over the legality of the Maryland divorce as well as the legality and permanency of his intended marriage to petitioner. He gave his opinion and counsel to petitioner in his own handwriting, stating that if the marriage of petitioner to him took place within the State of Maryland such marriage would be valid.

Respondent's written opinion, delivered on December 23, 1916, prior to the granting of the Maryland decree, reads as follows: " But the law is firm in this and every other State of the Union, that where the Court has jurisdiction and gives a decree, whether by publication or personal service, *and the parties are married within*

*that jurisdiction of the Court giving the decree, the marriage is valid, and the saying is, Valid where made, Valid everywhere, and no Court would pronounce it different.* That is the reason I am so interested in the requirements of *your* State [italics of the word ' your ' those of this court] as it would be best for all concerned to have a marriage come off there."

The characterization of the residence of the petitioner in Maryland as " your State " has, considering all the other circumstances, an additional probative force in determining the actual residence of the petitioner as a resident of that State at the time of her divorce from her former husband, Martin.

Immediately after and less than one week following the decree of divorce of the Maryland court and on April 4, 1917, petitioner was married to respondent in Maryland.

Following the marriage the respondent and the petitioner lived together for some twenty years. They purchased a home in Richmond Hill, Queens county, taking the deed in the name of " George E. Campbell [the respondent] and Beatrice S. Campbell, his wife [the petitioner]."

In May, 1937, the respondent began an action in the Circuit Court of the Fourth Judicial Circuit of Duval county, Fla., for a divorce from the petitioner. The evidence shows that the petitioner was never served in the Florida divorce proceeding nor did she make any appearance in that action, nor does it appear that the respondent was ever an actual resident of Florida.

At the outset there arises a very strong presumption that the marriage challenged by respondent is valid. Where the validity of a marriage is assailed upon the allegation that one of the parties was a party to an earlier marriage, the presumption is in favor of the second marriage. (*Matter of Salvin*, 106 Misc. 111.)

Moreover, the petitioner, after being deserted by her first husband, Martin, had a right to return to Maryland and to make her domicile there. (*Post* v. *Post*, 149 App. Div. 452; *Gray* v. *Gray*, 143 id. 354.)

There is no rule of law that requires a wife to remain in the original domicile of the deserting husband after his abandonment, departure and disappearance. There is no existing rule of law or equity which compels an abandoned wife to continue to reside in the abandoned domicile of a deserting husband.

That the petitioner after her marriage to the respondent returned to New York with respondent to take up her domicile in New York with him was proper and appropriate, as the residence of a husband and wife living together is the legal domicile of both.

But under the circumstances disclosed by the evidence the respondent should not be heard to question the validity of a marriage which he himself induced and which he encouraged petitioner to enter into, and into which marriage the petitioner entered in in entire good faith, in the belief fostered and created by respondent that the marriage would be a valid one. (*Brown* v. *Brown,* 266 N. Y. 532.)

The rule in the *Brown* case (*supra*) and in *Starbuck* v. *Starbuck* (173 N. Y. 503), which must be applied to the case at bar, will not permit the respondent to use the courts of this State to perpetrate an outrage against society as well as an injustice upon the petitioner by permitting the defense asserted by him to succeed.

In *Hubbard* v. *Hubbard* (228 N. Y. 81) the Court of Appeals stated the equitable rule as follows: " The policy of this State is not embodied in any legislative enactment or is not a rule of universal law. It exists to promote the permanency of the marriage contracts and the morality of the citizens of the State. Whether or not the operation of a foreign decree of divorce in a given case will contravene the policy or wrong or injure citizens of the State is exclusively for its courts to determine. They are the final judges of the occasions on which the exercise of comity will or will not make for justice or morality. The exercise rests in sound judicial discretion guided and controlled by the policy of the State, relevant judicial decisions and the circumstances of the case."

The Florida divorce is not claimed by the respondent in the instant proceeding to have severed his legal status as the husband of petitioner, nor has he set it up as a defense, nor, indeed, could any such defense be asserted under its circumstances.

The evidence shows that the petitioner is ill and unable to work and in need of support. The testimony fully corroborates this, and the appearance of the petitioner in court indicated obviously that she was ill. She is entitled to the relief sought, as she is without adequate means.

The respondent is a lawyer and is receiving a pension as a retired probation officer of the city of New York of $127.54 per month. The demand of the petitioner for the relief sought is granted, and the respondent is hereby ordered to pay the sum of forty dollars per month to the petitioner, beginning November 1, 1937.