In the Matter of the Estate of EDWARD E. SCHNEIDER, Deceased.

Surrogate's Court, Kings County, May 25, 1954.

*Arthur N. Field* for Max E. Schneider and another, as executors of Edward E. Schneider, deceased, petitioners.

*Homer I. Harris* for Marie Schneider, respondent.

Rubenstein, S. The executors seek a determination as to the validity and effect of a notice of election filed under section 18 of the Decedent Estate Law by respondent who claims to be testator's widow.

As to most of the background there is no substantial dispute. In 1937, respondent, then the wife of another, was defendant in a divorce action in this State. Testator was named as corespondent in such divorce action but he did not appear, answer or otherwise plead. The record does not show that any default of his was noted.

The testimony offered on that hearing did not identify testator. The findings of fact made therein recite that " the defendant committed adultery with a man whose name is not known to the plaintiff." The decree of divorce entered therein against respondent became final on February 28, 1938.

Thereafter testator and respondent obtained a license to marry in this State, respondent falsely stating she was not a divorced person. On March 13, 1938, a ceremonial marriage was performed in this State. From then on until testator entered the hospital in 1952, shortly before his death, they lived together as husband and wife in the States of New York, New Jersey and Florida.

The evidence establishes, and the court finds, that at all times during this period after the ceremony testator and respondent held themselves out and conducted themselves as a married couple and they were so considered by their relatives and those that knew them. When they visited Florida for several weeks they registered, held themselves out and were known as husband and wife. They conducted themselves in the same way in the State of New Jersey on their visits there. They made joint solemn declarations of their status. Income tax returns were filed in their joint married names. Title to real property in New Jersey was taken in the name of testator and respondent, " his wife," and the deed recorded there. There is no showing that at any time during this period either one of them regarded the other as anything other than his lawfully wedded spouse and no evidence has been adduced which might question the *bona fides* of their relationship during this time.

Nevertheless, in the face of these established facts, the executors insist that, since the ceremonial marriage was invalid, no later valid consensual relationship came into existence because " as the parties assumed that they were married in New York, there would naturally be no thought or tendency on **their part** to enter into a common law marriage." They further

insist that the initial relationship between testator and respondent was meretricious, and the ceremonial marriage being void, the relationship continued to be meretricious. Lastly, they argue that this court should take the view of the minority in *Shea* v. *Shea* (294 N. Y. 909), that section 11 of Domestic Relations Law makes invalid in New York State a common-law marriage entered into by residents of this State outside this State.

Concerning this last contention, the *Shea* case recognized such a common-law marriage. For almost nine years since it was decided, the Legislature has failed to amend the section. On the effect of a decision by a sharply divided court, the Court of Appeals, in *Semanchuck* v. *Fifth Ave. & 37th St. Corp.* (290 N. Y. 412, 420), had this to say, here pertinent: " The authoritative force of a decision as a precedent in succeeding cases is not determined by the unanimity or division in the court. The controversy settled by a decision in which a majority concur should not be renewed without sound reasons, not existing here." (See, also, *Rubin* v. *Irving Trust Co.*, 305 N. Y. 288, 305–306 and *Matter of Miller*, 299 N. Y. 708.)

Likewise, the contention that the initial relationship was meretricious and so continued has nothing of substance to sustain it. Insofar as the naming of testator in the complaint as corespondent in the divorce action may have notified him that he was charged with adultery, his failure to appear, answer or otherwise plead does not bind this respondent. Moreover, the evidence adduced and the finding made in that action, contrary to the allegation in the complaint, establish that respondent's adultery was committed with a man unknown to the plaintiff therein. Thus the record in the divorce action and the other attempts to establish an initial meretricious relationship amount to nothing more than a suspicion that such was the fact, an inadequate substitute for cogent evidence from which such fact could be validly inferred.

The collateral argument that testator and respondent were presumed to know the law and, knowing the law, they were presumed to know that they had entered into an invalid relationship, one not recognized by the law and thus meretricious, also has little to support it. There is no evidence that either party knew or even suspected that the ceremonial marriage was void. This seems to be conceded. The New Jersey courts have said that in New York no presumption exists that all men know the law; in New Jersey it is said that there is such a presumption " ' strong in the case of a lawyer, or with respect to general laws

which are matter of common knowledge; weak, almost non-existent, in respect to details or to laws which touch few persons ' ''. (*Chirelstein* v. *Chirelstein,* 12 N. J. Super. 468, 484, citing *Schaffer* v. *Federal Trust Co.,* 132 N. J. Eq. 235.) '' Speaking broadly,'' said Judge POUND in *Municipal Metallic Bed Mfg. Corp.* v. *Dobbs* (253 N. Y. 313, 317), '' we may say that all persons are treated as if they knew the law in passing on the character of their acts.'' So here, this respondent is being treated as if she had known that the ceremonial marriage was void. That is the start of her difficulties; had she and testator done in New Jersey or Florida what they did in New York, the validity of the marriage could not be questioned. But to go beyond treating the New York marriage as void and to impute to her the knowledge that it was void in the eyes of the law is unwarranted and contrary to the demonstrated and conceded facts. (Cf. as to the knowledge of the law generally, the dissenting opinion of Judge DESMOND in *Matter of Riverdale Fabrics Corp.* [*Tillinghast-Stiles Co.*], 306 N. Y. 288, 292.)

Assuming, *arguendo* only, that the parties knew that the New York marriage was void, the court finds as a fact, if they so knew, that they went to New Jersey and Florida for the express purpose of renewing their consents and that while there they did so renew them. While in New Jersey and Florida, they '' might very naturally desire to remove any doubt as to the validity of their marriage, and this could be done by renewing there their consent to be husband and wife. That they did so is the inference of the law, and, as has been said, is not an unreasonable supposition from the circumstances '' (*Hynes* v. *McDermott,* 91 N. Y. 451, 462).

In any event, the ceremonial marriage in good faith cured whatever suspicion of any illicit relationship that may have existed prior thereto. The parties '' undertook by a formal ceremonial marriage to enter the legal relationship of a man and wife. True their relation in the eyes of the law was illegal in violation of section 6 of the Domestic Relations Law (Cons. Laws, ch. 14), but it was not intended by the parties to be ' meretricious in the sense that it was known to the parties to be immoral and unlawful, even if, as a matter of law, it was illegal and void.' '' (*Matter of Haffner,* 254 N. Y. 238, 242.)

The executors make much of a failure to establish an actual express agreement by the parties in either New Jersey or Florida, *per verba de præsenti.* It was not necessary to do so by express words for their conduct in those States established the agreement under the law of those States as it would have under

the laws of this State when common-law marriages entered into here were recognized as valid here. Mutual consent to be man and wife by parties competent to marry followed by cohabitation apparently matrimonial appear to have been the essentials. No express method of evidencing the mutual consent was required (*Badger* v. *Badger*, 88 N. Y. 547; *Gall* v. *Gall*, 114 N. Y. 109; *Matter of Haffner, supra; Matter of Wells*, 123 App. Div. 79, affd. 194 N. Y. 548; *Townsend* v. *Van Buskirk*, 33 Misc. 287; *Matter of Crandall*, 214 App. Div. 363; *Matter of McNell*, 187 Misc. 899). Common-law marriages entered into in States permitting recognition of such consensual marriages are recognized in this State (*Shea* v. *Shea*, 294 N. Y. 909, *supra; Matter of Miller*, 299 N. Y. 708, *supra; Matter of Erlanger*, 145 Misc. 1; *Matter of Van Valkenburg*, 184 Misc. 949).

In New Jersey it would seem that the test adopted in late cases is " whether the parties still mutually desired marriage * * * in the present tense, at a time when they were both free to marry. If such was their wish and intention, the law esteems them man and wife. Our cases continue to reiterate that marriage is a civil contract, but the expression means little except that entrance into the married state comes only with the simultaneous, voluntary consent of both parties. The cohabitation, the adoption by the woman of the man's name and all the other circumstances giving rise to a matrimonial repute, are not weighed as evidence of the fact that at some time or other the parties said to each other, ' I take you to be my wife ' or ' husband.' But rather the circumstances are treated as evidence of their common desire and intention to be man and wife." (*Chirelstein* v. *Chirelstein*, 12 N. J. Super. 468; see, also, *Jordan* v. *Mohan*, 15 N. J. Super. 513.)

Much the same thought runs through the Florida cases. There upon the removal of an impediment which rendered a prior ceremonial marriage void there arises a presumption that a valid common-law marital status comes into being (*Jones* v. *Jones*, 119 Fla. 824, 104 A. L. R. 1). Recognition of the status after removal of the impediment seems to be enough (*Daniel & Sama* v. *Sama*, 17 Fla. 487). The only difference between a formal marriage under license and a common-law marriage is the difference in expressing consent. " Where cohabitation and repute are relied on to show such a marriage, the cohabitation must be professedly as husband and wife and public, so that by their conduct with each other, the parties may be known as husband and wife. * * * Where two parties, both competent to enter into a marriage status, consummate a common law

marriage, they are just as effectually married to one another as if they had been married pursuant to a marriage license * * * If the marriage status ever once comes into existence, it remains in full force thereafter until it is dissolved by law or death of one of the parties." (*Catlett* v. *Chestnut*, 107 Fla. 498, 512, 513, 91 A. L. R. 212; see, also, *Le Blanc* v. *Yawn*, 99 Fla. 328.)

The Supreme Court of Florida, in *McClish* v. *Rankin* (153 Fla. 324), appears to approve the reasoning of *Travers* v. *Reinhardt* (205 U. S. 423), where the court said, at page 440, that the parties' conduct toward each other " was equivalent, in law, to a declaration by each that they did and during their joint lives were to occupy the relation of husband and wife. Such a declaration was as effective to establish the status of marriage in New Jersey as if it had been made in words of the present tense ". In *McClish* v. *Rankin* (*supra*, p. 334), the court said that " the real test of a union of this type [a consensual or common-law union] is the actual representation to the public that the parties are husband and wife."

The court holds that sometime subsequent to the performance of the ceremonial marriage, either in the State of New Jersey when it was legally permissible to enter into a valid common-law marriage or in the State of Florida, testator and respondent then and there consented to be man and wife, thereby entering into a valid common-law marriage recognized as valid in this State. Respondent, therefore, as testator's widow, validly elected to take against testator's will under the provisions of section 18 of the Decedent Estate Law.

Submit order, on notice accordingly.