Stuart GRABOIS, in his fiduciary capacity as Assistant Director; The New York City District Council of Carpenters Welfare Fund, Pension Fund, Vacation Fund, Annuity Fund, Apprenticeship, Journeyman, Retraining, Education and Industry Fund, and Supplemental Fund, Plaintiffs–Appellees,

v.

Kay JONES, Defendant–Appellant,

Annie Marie Jones, Defendant.

No. 597, Docket 95–7278.

United States Court of Appeals, Second Circuit.

Argued Dec. 20, 1995.

Decided July 15, 1996.

98

Kay Jones, New York City, pro se.

Tom J. Ferber, New York City, for Plaintiffs–Appellees.

Before: MESKILL, ALTIMARI and CALABRESI, Circuit Judges.

CALABRESI, Circuit Judge:

This case, which is a disagreement over who is entitled to certain pension benefits, comes to us on a record that provides little or no guidance as to what law forms the basis of the dispute. It is in federal court under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001–1461. And, major issues in dispute may well have to be resolved under federal law. But deciding which of the two claimants is entitled to benefits also requires at least some recourse to New York law. Because the record leaves unanswered—and unanswerable—questions about the language of the benefit plan in dispute and the applicability of certain sections of ERISA, we remand the case to the district court for a fuller development of the record.

## Background

Kay and Junior Jones were married by a judge in New York on July 6, 1962. For 29 years, until Junior's death in July 1991, Kay raised five of his children, kept their home, and cared for Junior—covering his expenses and nursing him—through an illness that lasted for the final twelve years of his life.

Prior to Junior's illness, he had been employed as a carpenter. As a member of a carpenters' union, he had paid dues into a pension fund, with the expectation that the fund would eventually provide him with pension benefits, or, in the event of his death, would pay benefits to his designated beneficiary. Because the contract pursuant to which Junior arranged his pension was not entered into the record in the district court, we do not know who he in fact designated as his beneficiary.

In October 1991, Kay submitted a Death Benefits Application to the pension plan. The appellees, administrators of the pension fund, began paying benefits to Kay on the basis of her claim, and continued to do so until May 1992, when the fund administrator received a claim from Annie Marie Jones, stating that she was in fact Junior's legal widow.[1]

Annie Marie sent the fund administrators a copy of a Certificate of Marriage attesting that she and Junior had been married in Robersville, North Carolina on October 16, 1948.[2] There is no indication that Annie Marie had been in any way involved with Junior at least from July 6, 1962, the date of Junior's marriage to Kay, until the date of Junior's death. Nevertheless, Annie Marie claimed, her marriage to Junior had never been dissolved.

A number of facts concerning Kay's knowledge about Annie Marie's whereabouts and relationship to Junior were disputed. Annie Marie asserted that Junior and Kay had at all times known where she was living. Annie Marie also claimed that Kay had knowledge of the continuing validity of Junior's first marriage. But Kay claimed that she did not know precisely where Annie Marie was living, and that she had not realized that Annie Marie and Junior were married. In any event, Kay stated that she believed her marriage was legally valid because it had been performed by an official of the state of New

---

1. Annie Marie stated that she became aware of her right to receive benefits under the plan when the Social Security Administration—from whom she was receiving Junior's social security benefits—notified her of the plan's existence. Kay also claims to be receiving social security benefits as Junior's widow. This is one of many disputed factual issues that may, or may not, be relevant to the ultimate disposition of this case, but that cannot be addressed on the record before us.

2. Annie Marie apparently submitted two different marriage certificates to the benefits fund. The certificate introduced in May 1992 listed her name as Annie Marie Matthews. In January 1993, when Annie Marie submitted a formal Death Benefits Application, she provided a different marriage certificate, giving her maiden name as Annie Marie Andrews.

York. For purposes of considering the propriety of a summary judgment extinguishing Kay's claim to any of Junior's death benefits, we must take the facts in light most favorable to her, *see LaFond v. General Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir.1995), and so, at least at this stage of the litigation, we credit her statements as true.

In 1994, the fund administrators filed an interpleader complaint in the district court, pursuant to 29 U.S.C. §§ 1132(a)(3)(B), (e)(1) and (f), seeking a declaration as to which of the two claimants was entitled to receive the benefits.

■ The district court looked to New York law to determine who was the appropriate beneficiary of Junior's pension fund. New York Domestic Relations Law provides that a purported marriage is void if one of the parties was already legally married, *see* N.Y. Dom. Rel. Law § 6 (McKinney 1995). Accordingly, the district court found that Kay's marriage to Junior was void and concluded from that that she was not entitled to any of Junior's benefits. The court granted summary judgment for the plaintiffs, ordering the fund administrator to begin paying benefits to Annie Marie, and further ordering Kay to return those benefit payments she had already received.[3]

Kay appealed to this Court, arguing that the existence of a previous, undissolved marriage between Junior and Annie Marie should not eliminate Kay's right to some portion of Junior's death benefits since Kay married Junior in a formal ceremony, believing in good faith that her marriage was legal, and her marriage continued until Junior's death.

After reviewing the parties' arguments— which implicated questions unsettled in either New York or federal law—we decided to certify to the New York Court of Appeals the following question: "whether a second spouse whose marriage is void due to the existence of a prior, undissolved marriage, is nonetheless entitled to some portion of her or his spouse's death benefits when the second marriage was the result of a formal ceremony, undertaken in good faith, and the second marriage continued until the spouse's death." 77 F.3d 574, 576 (2d Cir.1996).

On April 2, 1996, the New York Court of Appeals declined the certified question, placing particular emphasis on "the likely rarity of any recurrence of this issue." The Court further noted its reluctance to take the case given the *pro se* status of the claimants, which would ensure the court "only limited assistance from the parties in deciding this issue." Finally, the Court chose not to decide the question because, since it arises in an ERISA context, the question might "be more appropriate for resolution in the first instance by the Federal courts." *Grabois v. Jones*, 88 N.Y.2d 254, 255, 644 N.Y.S.2d 657, 657, 667 N.E.2d 307, 307 (N.Y.1996).

On further review, we have concluded that the record below did not provide a sufficient factual basis to warrant summary judgment. The district court, moreover, apparently did not consider New York law's strong presumption in favor of the validity of a second marriage. Accordingly, we remand the case to the district court for further development of the record and consideration of the relevant legal questions.

### Discussion ·

■ Summary judgment is appropriate if, in light of the evidence presented, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The moving party bears the burden of establishing the absence of any genuine issue. *Adickes v. S.H. Kress*

---

3. Apparently, the district court urged the pension administrators to move for summary judgment and then granted that judgment in their favor. It appears from the record that Kay never answered the summary judgment motion. There is also no evidence in the record that Kay received any notice of the possible consequences if she did not respond to the summary judgment motion.

A district court's failure to notify a *pro se* plaintiff of the consequences of a failure to respond to a motion for summary judgment is reversible error. *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir.1994). On remand, the district court should ensure that Kay receives appropriate notice of the steps in the litigation process.

& Co., 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). When we review a district court's grant of summary judgment, we apply these standards and conduct a *de novo* review.

The problem we confront in considering this case is that, on the record developed below, we are in no position to make any final determination, either as to the relevant legal standards or as to their application to the facts of this case. Thus, in granting summary judgment, the district court stated that "[t]here is no dispute about . . . the fact that, upon [Junior Jones's] death in July 1991, his lawful widow was entitled to the benefits in question." But the contract pursuant to which the benefits were to be paid was never part of the record below, nor was a copy of that contract part of the record on appeal. Accordingly, we have no way of knowing whether the contract required payment of pension benefits exclusively to Junior Jones's *legal* widow, or to someone denominated, for example, more generally as "my wife".

The parties—both Kay, appearing *pro se*, and the pension fund administrators—argued that this dispute could be resolved by application of New York law. There are two possibly relevant questions as to which New York law might provide an answer. With respect to the first—which of two claimants is the legally recognized widow of Junior Jones—New York law clearly applies and provides the framework for reaching a conclusion. As the district court recognized, N.Y. Dom. Rel. Law § 6 states unambiguously that a second marriage is invalid if either of the parties to that marriage is already married.

█ What the district court does not appear to have considered, however, is that it is also well established New York law that when a court is confronted with the claim that a formal second marriage is invalid because of the existence of a valid first marriage, a strong presumption of validity attaches to the second marriage. *See, e.g., Seidel v. Crown Indus.*, 132 A.D.2d 729, 730, 517 N.Y.S.2d 310, 311 (3d Dep't 1987); *Frassetti v. Frassetti*, 57 A.D.2d 826, 826, 394 N.Y.S.2d 65, 65 (2d Dep't 1977); *In re Estate of Bihanskyj*, 55 A.D.2d 836, 837, 390 N.Y.S.2d 322, 323 (4th Dep't 1976). The presumption of the validity of the second marriage, moreover, grows stronger and stronger where a substantial injustice would be created by invalidating that marriage. *See Dolan v. Celebrezze*, 381 F.2d 231, 237–38 (2d Cir.1967) (Friendly, J.) (canvassing New York cases and noting that the presumption favoring the validity of the second marriage varies in its force with the attendant facts and circumstances). "[T]he decisions that have held the second marriage to be valid on the basis of the presumption are explicable in terms of effectuating a particular public policy such as upholding legitimacy [or] *favoring the participation in the decedent's estate of one who lived with him as his spouse* . . . ." *Id.* (emphasis added).

█ On the record below, Annie Marie Jones has not overcome New York's presumption, and several facts on the record create at least some uncertainty as to her ability to do so. First, in her application for benefits, Annie Marie presented the fund administrators with two different marriage certificates, each bearing a different maiden name. The discrepancy between the two is as yet unexplained. Kay also claims to be receiving Junior's Social Security benefits. For purposes of summary judgment, that claim must be accepted as true, and it, without more, raises considerable uncertainty as to Annie Marie's status in the light of the state law presumption. It follows that summary judgment was inappropriately granted on the question of which of the two women New York law would recognize as Junior's widow.

The resolution of this question, even if it were in favor of Annie Marie, would not necessarily end the inquiry as to who is entitled to Junior's pension benefits. What Kay Jones contends—and what we sought guidance about in certifying a question to the New York Court of Appeals—is that the payment of benefits does not inevitably depend on the validity of a marriage. This fact is recognized explicitly by statute in several jurisdictions. *See* Colo.Rev.Stat. § 14–2–111 (1995); Ill.Ann.Stat. ch. 750, ¶ 5/305 (Smith–Hurd 1995); Minn.Stat. § 518.055 (1994);

Mont.Code Ann. § 40–1–404 (1994). It also informs, in part, federal social security law. *See Capitano v. Secretary of Health & Human Serv.*, 732 F.2d 1066, 1068–70 (2d Cir. 1984); *Rosenberg v. Richardson*, 538 F.2d 487, 489–90 (2d Cir.1976). We found no New York cases on the issue, and the New York Court of Appeals in effect recognized that the question might well be an open one in New York law. It nevertheless, properly, noted that because this dispute arises under ERISA, it was preferable for us to speak to it first.

On reflection, we conclude that, despite the fact that the parties apparently argued on the assumption that New York law would govern this question, we may be required by ERISA's broad preemption clause to address the issue of the relationship between marital validity and receipt of benefits as a matter of federal law. ERISA's preemption clause provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a); *see also Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (explaining the breadth of the ERISA preemption language). This broad preemption is intended to ensure "uniform, national regulation of benefit plans." *Aetna Life Ins. Co. v. Borges*, 869 F.2d 142, 147 (2d Cir.), *cert. denied*, 493 U.S. 811, 110 S.Ct. 57, 107 L.Ed.2d 25 (1989); *see also Howard v. Gleason Corp.*, 901 F.2d 1154, 1157 (2d Cir.1990) (noting that ERISA preemption is triggered by "an effect on the primary administrative functions of benefit plans" (citation omitted)).

Under ERISA's preemption rule, the designation of the proper beneficiary to a pension plan covered by ERISA may well be one that is properly resolved by application of federal, rather than state, law. *See Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14 (2d Cir.1993); *Hurwitz v. Sher*, 982 F.2d 778, 780 (2d Cir.1992), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993). But the issue of whether state law would be preempted in a dispute such as the one presented here is a complex one that has not been adequately addressed by the parties. Under

the circumstances, it is appropriate to remand the question for decision by the district court, in the light of the above-cited precedents, after briefing and arguments. We do note that, if the question is one of federal law, it must be resolved either by the ERISA statute itself or, in the absence of a statutory provision, by federal common law. *Krishna*, 7 F.3d at 14. Where the statute leaves an issue open and no federal common law exists to address it, however, "resort may be had to state law." *Krishna*, 7 F.3d at 14; *see also Amato v. Western Union Int'l, Inc.*, 773 F.2d 1402, 1419 (2d Cir.1985), *cert. dismissed*, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986).

Application of federal—rather than New York—law to this dispute, instead of making the matter simpler, would raise even more questions on the record below. Among these is whether the answers to the disputed issue, in fact, lie in federal common law, or in the provisions of the ERISA statute itself. Once again, we cannot answer that question on the basis of the information available to us. If the pension funds are covered by ERISA's surviving spouse annuity provision, 29 U.S.C. § 1055—as almost, but not quite, all such pension plans are—then the direct commands of the statute govern the distribution of these benefits.

29 U.S.C. § 1055 clearly states that a "survivor annuity" must be provided to the surviving spouse of a covered employee. *Who* is a spouse depends on the laws of the relevant state—in this case, New York. *See, e.g., Davis v. College Suppliers Co.*, 813 F.Supp. 1234, 1237 (S.D.Miss.1993); *In re Lefkowitz*, 767 F.Supp. 501, 509 n. 15 (S.D.N.Y.1991). And, under the ERISA statute, the right of the state-recognized surviving spouse to receive this benefit may only be waived if the employee so elects, and if the spouse "consents in writing to such election ... [and] the spouse's consent acknowledges the effect of such election and is witnessed by a plan representative or a notary public." 29 U.S.C. § 1055(c)(2)(A). The one relevant exception to this strict requirement of consent arises if "it is established to the satisfaction of the plan representative that the consent ... may not be obtained because ... the

spouse cannot be located. . . ." 29 U.S.C. § 1055(c)(2)(B).

Thus, if the district court finds that § 1055 is applicable to the funds disputed here, two questions would follow. The first is which of the two claimants is Junior's spouse under New York law, a question that the court must answer in the light of both state statutory provisions and relevant case law, which, as discussed above, includes a strong presumption of validity for second marriages.

If, despite the presumption, the court determines that Annie Marie is Junior's legal spouse, it may wish to inquire whether the provisions of § 1055(c)(2)(B) have been met under the circumstances presented here. Of course, there is no suggestion in the record that Annie Marie explicitly waived an entitlement to any benefits. But one might infer from Junior's formal marriage to Kay an agreement to install Kay as the rightful recipient of any benefits. If the court did make such an inference, Annie Marie's right to receive the benefits would rest on whether Junior knew where Annie Marie could be located, since § 1055 is clear that her consent to a waiver of benefits must be obtained if she can be found.

Should the court find, instead, that the pension fund at issue in this case is not controlled by 29 U.S.C. § 1055, but that the interpretation of this plan is nonetheless a matter of federal law, then federal common law would require the district court to undertake essentially the same kind of analysis as

would be required under New York law, should that law instead be found to apply to this part of the dispute. In either case, the district court would have to consider whether the language of the plan itself defines the beneficiary in clear terms as the *legally* recognized relict, or uses terms—like widow or widower, husband or wife—loosely in a way that might connote even a non-legal wife or husband whom the decedent nevertheless meant to treat as the surviving spouse. This is a question of contract interpretation. If the plan is ambiguous, we conclude that the burden of proving entitlement to the benefits rests with Annie Marie. This rule accords with New York's presumption in favor of the validity of the formally entered into second marriage. It is also consonant with the preferences of both this Court and the New York courts for weighing the equities of a particular situation when resolving this type of benefit dispute.[4]

It is apparent that any number of questions remain to be answered before this case can be resolved. We are conscious of the manifold difficulties a district court faces in a case like this, where the only party represented by an attorney has no direct interest in the resolution of the dispute, other than the speed with which it is achieved. And this may make the appointment of counsel for the *pro se* claimants advisable.

## CONCLUSION

We cannot decide the issues presented here on the basis of the record we have

---

4. This Court, when presented with circumstances somewhat analogous to those here—involving, however, the interpretation of the Social Security Act—has found that a second spouse whose marriage was undertaken in good faith retains a right to some benefits, even in the face of a competing claim by the first—and, under applicable state law, explicitly the legal—spouse. See *Capitano*, 732 F.2d at 1068–69; *Rosenberg*, 538 F.2d at 490–91; *see also Kirkland v. Railroad Retirement Bd.*, 706 F.2d 99, 103–04 (2d Cir. 1983) (applying the same analysis to the Railway Labor Act and discussing the standards for proving good faith in the second marriage). Similarly, New York courts have reached equitable solutions to ameliorate the harsh consequences of invalidating a second marriage in some circumstances. See, *e.g. Silva v. Scherer*, 23 A.D.2d 580, 580, 256 N.Y.S.2d 733, 734 (2d Dep't 1965) (Where a couple was married before the wife's divorce in a previous marriage had been final-

ized, the second marriage was invalid. Nevertheless, the "grantees acted in good faith as to their marriage," and the wife could not therefore be stripped of her interest in certain property that had been granted to the couple as tenants by the entirety.); *In re Schneider's Will*, 206 Misc. 18, 22–23, 131 N.Y.S.2d 215, 219–20 (Sur.Ct. 1954) (Where a couple had, in good faith and through a formal ceremony, entered a marriage that was invalid under New York law, the court construed the couple's travels to New Jersey and Florida as an implicit effort to validate their marriage under the common law marriage rules of those states.); *Campbell v. Campbell*, 164 Misc. 647, 650, 1 N.Y.S.2d 619, 622 (Dom.Rel.Ct. 1937) (Where the husband, an attorney, induced his wife to enter into an invalid marriage, and she entered into that marriage in good faith, the husband could not subsequently challenge the validity of the marriage.)

before us. Accordingly, we vacate the order of summary judgment and remand the case to the district court for further proceedings.

MESKILL, Circuit Judge, concurring in the result and dissenting from the Opinion:

I concur in the result. Kay Jones, as a *pro se* litigant, should have been notified of the consequences of failure to respond to a motion for summary judgment. *Ruotolo v. IRS,* 28 F.3d 6, 8 (2d Cir.1994). Therefore, I go along with the majority in remanding this matter to the district court for further proceedings. However, I cannot join in the opinion.

In our solicitude for the rights of Kay, we should remember that Annie Marie is also a *pro se* litigant. We also should remember that the fund administrators are seeking in earnest an early determination of which claimant is entitled to the benefits.

The majority asserts that we must view the facts in a light most favorable to Kay because the grant of summary judgment extinguished her claim to Junior's benefits. The case the majority cites for this proposition, *LaFond v. General Physics Servs. Corp.,* 50 F.3d 165, 171 (2d Cir.1995), supports no such position. *LaFond* merely restates the well-accepted proposition that a reviewing court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Id.* Unfortunately, both Kay and Annie Marie are non-moving parties in this interpleader action. Thus, *LaFond* helps neither claimant here.

There are limits to how far an appellate court should go in reviewing a matter before it, even where the contesting parties, the defendants here, are not represented by counsel. The majority complains about the benefits contract not being in the record below. The benefits contract is not under attack, however. No party has challenged the district court's statement that "[t]here is no dispute about ... the fact that, upon [Junior Jones'] death in July 1991, his *lawful widow* was entitled to the benefits in question." More importantly, Kay makes no claim that Junior's marriage to Annie Marie was dissolved; she claims only that she

thought her own marriage to Junior was valid.

Kay's claim is one of fairness, that she is more deserving of the benefits. It is a sympathetic claim, but unfortunately, not a winning one under New York law. It is not for us to *create* the appearance of a colorable issue under cover of a void in the record.

By speculating on issues that might have been raised by Kay, but were not, we are abandoning our role as an appellate court. Rather than providing guidance to the district court on remand, the majority is suggesting strategy, albeit subtly, for *pro se* Kay to use against *pro se* Annie Marie, some of which Kay may not be able to pursue in good faith, and all because applying existing New York law produced a harsh result. If ever there was an example of "hard cases making bad law," this is it.

I also have difficulty with the theory advanced by the majority. The majority asserts that ERISA's preemption clause may require us to determine whether the payment of benefits under the benefits contract depends on the validity of a marriage as a matter of federal law. In my view, the majority is attempting to use the preemption clause to rewrite ERISA.

As the district court and all parties agree, the "lawful widow" of Junior Jones is entitled to receive Junior's benefits. As the majority concedes, New York Domestic Relations Law determines who is the "lawful widow" of the deceased. *See* N.Y. Dom. Rel. Law § 6 (McKinney 1988) (stating that a second marriage is invalid if either party to that marriage is married already). Once the "lawful widow" is identified, that person is entitled, under the benefits plan, to Junior's benefits. That is all the analysis that is necessary.

The preemption analysis in the majority opinion leads nowhere. New York law is applicable only to the extent that it defines who is recognized as a valid spouse. Although that definition affects who is entitled to benefits here, New York Domestic Relations Law section 6 neither asks nor answers any question of whether the receipt of benefits depends solely on the validity of a mar-

riage. In short, there is no relevant New York law at issue for ERISA to preempt.

More importantly, ERISA does not provide any basis for disturbing the distribution of benefits under Junior's benefits contract. In other words, ERISA does not call for any "good faith" spouse analysis. Although ERISA may regulate the designation of beneficiaries under an ERISA plan, *see Krishna v. Colgate Palmolive Co.*, 7 F.3d 11, 14 (2d Cir.1993), there is no question here that Junior Jones complied with the requirements of the benefits contract and ERISA in designating his beneficiary as his lawful widow. Similarly, although we have recognized the entitlement of "good faith" spouses to some portion of benefits in the social security context, those decisions at least purported to rest on the text of the statute. *See Capitano v. Secretary of Health and Human Servs.*, 732 F.2d 1066, 1068–70 (2d Cir.1984) (construing 42 U.S.C. § 416(h), which grants entitlements to "good faith" spouses); *Rosenberg v. Richardson*, 538 F.2d 487, 489–91 (2d Cir.1976) (same). Moreover, in those cases, if the "good faith" spouse was not awarded the benefits, benefits would have reverted to the government. *Rosenberg*, 538 F.2d at 491. Despite strong criticism of the *Rosenberg* analysis, *see Martin v. Harris*, 653 F.2d 428, 432 (10th Cir.1981) (criticizing *Rosenberg*); *Dwyer v. Califano*, 636 F.2d 908, 910–11 (3d Cir.1980) (same); *Davis v. Califano*, 603 F.2d 618, 628 (7th Cir.1979) (same); Peter W. Martin, *Social Security Benefits for Spouses*, 63 Cornell L.Rev. 789, 819 n. 119 (1978) (characterizing *Rosenberg* as reaching an "insupportable conclusion"), the majority here takes the *Rosenberg* analysis one step further by advancing a "good faith" spouse issue without any statutory support.

No amount of obfuscation can disguise or justify such judicial policy-making, particularly in this context. Federal courts have long disclaimed diversity jurisdiction over domestic relations cases, *Barber v. Barber*, 62 U.S. (21 How.) 582, 16 L.Ed. 226 (1858), in recognition of the states' "especially strong interest and ... well-developed competence for dealing with" domestic relations matters. Charles A. Wright, Law of Federal Courts § 25, at 144 (4th ed.1983). In my view, the majority's attempt to alter the effect of New York law under cover of ERISA tramples on the ancient policy of deferring to the states in matters of domestic relations.

Furthermore, I simply do not agree that the district court ignored the presumption in favor of the validity of a second marriage and erred in concluding that New York law would recognize Annie Marie as the lawful widow of Junior Jones. Although the district court did not discuss New York's presumption in favor of the second marriage, the court in its analysis clearly applied such a presumption. The district court did not require Kay Jones to prove, in the first instance, that her marriage to Junior was valid. Rather, implicitly applying the presumption that Kay's marriage to Junior was valid, the district court explicitly considered not only the evidence that Annie Marie had been married to Junior, but evidence that Annie Marie and Junior were separated but never divorced, and that Kay was aware of this fact but considered it inconsequential because of her "formal" marriage to Junior. The court clearly concluded that Annie Marie rebutted any presumption in favor of the second marriage.

Kay did not provide any evidence that Junior and Annie Marie were divorced. More importantly, she does not challenge on appeal the court's finding that the marriage between Annie Marie and Junior was never dissolved. Rather, she claims that Junior's first marriage should not affect her right to Junior's death benefits because she believed in good faith that her marriage was legal. Under these circumstances, it is disingenuous for the majority to conclude that the district court erred in finding that New York law would recognize Annie Marie as Junior's lawful widow.

Finally, I find strange the majority's "suggestion" that the district court appoint counsel for the parties. Earlier, we denied Kay Jones' motion for appointment of counsel because she failed even to make the *threshold* showing of indigency.

Compassion is an admirable trait in any deliberative body, but it cannot justify the abandonment of our proper scope of review. Courts can and do resolve disputes that are

properly before them, but they cannot provide a remedy for every injury.

For these reasons, I simply would remand for further proceedings and let the normal litigation process take its course.